**Lawrence MURPHY, Jr., et al.,**
**Appellants,**
v.
**UNITED STATES of America,**
**Appellee.**
No. 72–1679.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1973.

Decided June 29, 1973.

---

[1]. Two active judges have disqualified themselves throughout for a reason other than their membership on the Council.

**58**

David Garcia, Devils Lake, N. D., for appellants.

Harold O. Bullis, U. S. Atty., Fargo, N. D., filed printed brief for appellee.

Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,[*] Senior District Judge.

TALBOT SMITH, Senior District Judge.

This case arose out of an occupation of the Municipal Center (including the jail and law enforcement facilities) of the Bureau of Indian Affairs on the Devils Lake Sioux Indian Reservation at Fort Totten, North Dakota, in April, 1972.

At a meeting held at the home of defendant Lawrence Murphy, Jr., in the early hours of April 22, it was decided by the group there present that the Municipal Center would be "occupied." At approximately 5:20 that morning such action was taken. Two of the police officers on duty had been called away by calls later discovered to be false. The group entered, led by appellant Murphy, followed by appellants Thumb, Charboneau, Knutson, Rodney Fournier, and other men, women, and children. Appellant Murphy entered the dispatch office, told the dispatcher that "they were tak-

---

[*] Hon. Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

ing over the jail" and, later, told the group to "Let the prisoners that wanted to go, let them go."[1] No resistance was encountered. After occupation the doors were secured by chains, barricades and ropes, and entry denied to officers and others requesting admittance. The reply to the Agency Superintendent, who sought a conference about noon "so he could visit with the people to see what their grievances might be," was "that no one would be allowed entrance until the reporters and the news media were present."[2]

Later that day the U. S. Marshal and Agency Special Officer Trottier were admitted. At the conference following, those occupying the jail were advised that they were violating the Federal law and were asked to leave. Occupancy continued through the following day, Sunday, until about midnight, at which time the facility was re-occupied by the Fort Totten police.

The appellants were charged in a three count indictment stemming from the take over, as aforedescribed, of the Center. Count One charged Lawrence Murphy, Jr., Gary Thumb, Karen Ross, Stephen Charboneau, James W. Baker, Mary Jo Knutson, Florence Joshua, Michael W. Joshua, George Fournier and Rodney Fournier with a conspiracy to prevent by force, intimidation and threats, three Federal officers, Agency Special Officer Eugene Trottier, Captain of Police Charles H. Cruse and Police Officer Gerald Jensen from discharging their official duties in violation of 18 U.S.C. § 372.

Count Two charged the same defendants with willfully and forcibly resisting, opposing, impeding and interfering with the named Federal officers while they were engaged in the performance of their official duties in violation of 18 U.S.C. § 111.

In Count Three James Thomas Cavanaugh was charged with a violation of 18 U.S.C. § 751 by escaping from the custody of officers and employees of the Bureau of Indian Affairs after having been lawfully arrested by Police Officer Gerald Jensen. Lawrence Murphy, Jr., and Gary Thumb were charged with aiding and abetting James Thomas Cavanaugh in his escape.

The case was tried to a jury and Lawrence Murphy, Jr., and Gary Thumb were found guilty of all three counts. Karen Ross, Stephen Charboneau, Mary Jo Knutson, Florence Joshua, Michael W. Joshua, George Fournier and Rodney Fournier were found guilty of count one, but were acquitted on count two. James Thomas Cavanaugh was found guilty of count three. James W. Baker was acquitted as to both counts one and two.

Appellants urge to us as error that the Court refused on the last day of trial to permit them to call the U. S. Attorney prosecuting the case as a witness, that the Court denied defendant Cavanaugh's motion for acquittal on the escape charge, such error also invalidating the convictions of defendants Murphy and Thumb for aiding and abetting such escape, and that the Court permitted the U. S. Marshal to testify. We consider these alleged errors *seriatim*. They are equally lacking in merit.

At the close of defendants' case, counsel for defendants, in open court and in the presence and hearing of the jury, and without consultation with either the Court or the U. S. Attorney, stated "Call Harold Bullis" [the call was for Mr. Harold O. Bullis, U. S. Attorney, who was acting as trial counsel for the Government.] Bench conference followed. Mr. Bullis expressed his entire willingness to testify. Defense counsel was asked to place in the record the testimony which he would expect to elicit

---

1. Appellant Murphy was apparently the *de facto* leader of the group. Asked if he were "in command," defendant Cavanaugh replied "Well, everyone listened to him when he told them to let the ones go that wanted to go. Well then, everyone else just listened to him." (Tr. 232)

2. Tr. 437.

from Mr. Bullis, stating, in effect, in response thereto, that it concerned meetings and negotiations with various of the interested parties. The Court held that such matters "have been fully covered by other evidence in the case," found that no prejudice would result to defendants by denying them the right to call Mr. Bullis, and pointed out, as well, not only the lack of availability of other Government counsel to continue the case, but the Court's own commitments elsewhere on the following day. Mr. Bullis again offered to take the stand without calling in another U. S. Attorney if it were agreed that he might continue as counsel in the case. It was so agreed, but upon the Court's pointing out to defense counsel the "difficult position" in which counsel's unexpected request had put both the Court and the Government, the request for Mr. Bullis' testimony was withdrawn. The jury was then advised of the situation and told that the request had been withdrawn.

The charge made to us is that "the practical effect—the Court's attitude—was to compel their counsel to do so, [withdraw the request] and thus, in effect, deprive them of their constitutional guaranties of a fair trial."

The trial judge is invested with a wide discretion in the matter of the examination of witnesses. He tries the case, not us. Gajewski v. United States, 321 F.2d 261 (8th Cir. 1963); Hayes v. United States, 329 F.2d 209 (8th Cir. 1964), cert. den. Bennett v. United States, 377 U.S. 980, 84 S.Ct. 1883, 12 L. Ed.2d 748 (1964). The complications in the situation presented late in the trial and unexpectedly to the court are obvious. The accused has, of course, the right to present a complete defense. At the same time, it is undesirable that the triers of the facts be put in the position of having to weigh the credibility of the advocates before it. In addition we are not unmindful of the ethical problems presented when counsel appears as a witness for his clients. Here the trial court found, after offer of proof, that the testimony to be adduced was merely cumulative. Thus the prejudice to defendants was insubstantial. In the light of such finding, as well as the pertinent circumstances of the situation, we find no error in the court's ruling, even had the request not been withdrawn.

Count Three of the indictment charged that defendant Cavanaugh, one of the prisoners in the jail at the time of its takeover, being in the custody of Federal officers pursuant to a lawful arrest, escaped therefrom in violation of Title 18, U.S.C. § 751(a).[3] It also charged defendants Murphy and Thumb with aiding and abetting such escape. All three defendants were found guilty as charged and placed on probation.

■ Defendant Cavanaugh had been arrested by a Federal officer, Gerald Jensen, a Police Officer employed by the Bureau of Indian Affairs. The defendant had thereafter been lodged in the Fort Totten jail, a facility owned by the United States.[4] It was argued to the trial court upon motion for acquittal, and renewed before us, that when Cavanaugh was lodged in jail he was there-

---

3. § 751. Prisoners in custody of institution or officer

(a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

4. The record does not disclose the details of the operation and maintenance of this jail.

upon and thereafter in the custody of "the jail guards and radio dispatcher" and that, for guilt, as charged in the indictment, it was necessary that he escape "from the actual physical custody" of the Federal officer, Jensen, who arrested him. Such is not the law. The cases are legion that possession or custody by the Federal officer may be constructive as well as actual, thus that an escape from St. Elizabeth's Hospital by a prisoner under treatment, Frazier v. United States, 119 U.S.App.D.C. 246, 339 F.2d 745 (1964), was a violation of Title 18, U.S.C. § 751, the Court holding it to be "clear that the 'custody' intended is not limited to actual physical custody." Similar holdings are found in Read v. United States, 361 F.2d 830 (10th Cir. 1966), an escape by prisoners allowed to take place in a "speech contest" in a nearby community, and Nace v. United States, 334 F.2d 235 (8th Cir. 1964), wherein a prisoner in a "Guidance Center" who had been permitted to work with a private employer maintained that he was not in "custody" within the meaning of § 751, *supra*. The Court, in rejecting the argument, aptly characterized the contention as "frivolous." Defendant's reliance upon United States v. Puncsak, 146 F.Supp. 523, 16 Alaska 527 (D.C.Alaska 1956) is misplaced. There the defendant having been indicted for escaping from "the custody of the Bureau of Prisons an authorized representative of the Attorney General," was held by the Court never to have been in the custody of the Attorney General under the statutory structure of the then Territory of Alaska.

█ It is urged also as error that Marshal Link was permitted to take the stand and testify, over objection of counsel, to the effect, as we have noted, that he informed the defendants on Saturday, April 22, that their conduct was unlawful. The grounds for the objection were general, namely, that during the trial he had been on duty as an officer of the Court, had supervised order in the Court, had summoned witnesses, had "actively visited and associated with the jury" and had "in general performed his prescribed duties."

Appellants are apparently relying upon Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) where a sequestered jury was in close and continuous association with two deputy sheriffs who testified at the trial and whose testimony was central to the development of the case for the prosecution.

There is no doubt that a jury is to be protected against external and unwarranted contacts but "As Turner [Turner v. Louisiana, *supra*] makes clear, the Court declared no *per se* rule that mere contact or association between a witness for the prosecution and a member or members of the jury constitutes the trial unfair in the constitutional sense; more must appear to affect the validity of a conviction." Helmick v. Cupp, 437 F.2d 321 (9th Cir. 1971). To the same effect see Gonzales v. Beto, 445 F.2d 1202 (5th Cir. 1971). The facts of each case must be examined to determine whether prejudice may have resulted from the contacts made. General conclusionary allegations do not suffice to reach due process proportions. Specifically we note that the Marshal was not in charge of the un-sequestered jury, it having its own Bailiff. The Marshal's contacts with the jury were not continual and intimate, his direct testimony was limited to his warnings to the group and he was excused from further attendance upon the trial at the conclusion of his testimony. Upon the record before us we find no prejudice to have resulted to appellants and none has been cited to us.

Affirmed.