UNITED STATES of America,
Appellee,

v.

Larry Edward STEAD, Appellant.

No. 75–1367.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1975.

Decided Dec. 12, 1975.

Rehearing Denied Jan. 12, 1976.

Certiorari Denied April 26, 1976.
See 96 S.Ct. 1730.

Lynn D. Howard, St. Louis, Mo., for appellant.

Frederick Buckles, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before CLARK, Associate Justice,* and LAY and ROSS, Circuit Judges.

Mr. Justice CLARK.

Appellant, Larry Edward Stead, appeals from his conviction for escaping from the custody of the Attorney General or his authorized representative, in violation of 18 U.S.C. § 751. Stead raises three grounds for reversal: (1) he was not in the custody of the Attorney General or his authorized representative at the time of his escape but was in the custody of Missouri officials to attend proceedings before the State court pursuant to subpoena; (2) the government did not meet its burden of proving his

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.), sitting by designation.

sanity at the time of his escape; and (3) his conviction and sentence violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. We find no merit in any of the contentions and affirm the judgment of conviction.

### The Facts

Stead, while serving a sentence in the United States Penitentiary at Marion, Illinois, filed a petition for a writ of error *coram nobis* in the Circuit Court of St. Louis County, Mo., attacking certain state court judgments and sentences imposed upon him and already served. On July 12, 1974, a writ of habeas corpus *ad testificandum* was directed to the United States Marshal at St. Louis and the Warden of the United States Penitentiary at Marion, to bring Stead before the Circuit Court of St. Louis County for the purpose of giving testimony in the post-conviction proceeding he had initiated. The writ—which was returnable on August 30, 1973—also ordered that "after said proceeding the defendant shall be returned forthwith" to the custody of the Marshal and the Warden. On August 28, 1974, Stead was delivered to the St. Louis County Jail and was booked as a "Federal Prisoner Awaiting Transportation." Pursuant to the state writ, Stead was delivered to the St. Louis County Court on August 30th by a deputy federal marshal. At the close of the proceedings, the same deputy returned Stead to the County jail to await transportation back to Marion. Thereafter, on September 21, 1974, Stead escaped from the jail. He was not recaptured until September 26th, when he was returned to Marion.

### Stead's Custody

Stead contends that he was in the custody of the Missouri State Officials, citing *Barth v. Clise,* 79 U.S. [12 Wall.] 400, 20 L.Ed. 393 (1870). However, that case is entirely inapposite. *Barth* was a civil action based upon another civil action. Sheriff Clise arrested Brinkman, a defendant in a civil action brought by Barth, on a writ and was ordered by the court to bring Brinkman before the court. While in court, Brinkman escaped. Barth sued Clise for damages for the escape. The Supreme Court held that Barth could not recover because Clise's authority under the arrest had been superseded upon Brinkman's delivery into court, and from that point the responsibility had shifted to the court. Here, however, the writ specifically provided that "after said proceeding the defendant shall be returned forthwith." [1] The taking of his testimony was completed and Stead had been returned to the federal prisoner section of the jail when he escaped. [2] The analogy appellant would draw to *Derengowski v. United States,* 404 F.2d 778 (8th Cir. 1968), *cert. denied,* 394 U.S. 1024, 89 S.Ct. 1640, 23 L.Ed.2d 49 (1969) is also inapposite. There the escape attempt was actually made before Derengowski was remanded to the original authority's custody. The mere fact that Stead was in the county jail when he escaped is of no consequence. The custody of the county jail was simply that of the federal officers under the circumstances here. *Murphy v. United States,* 481 F.2d 57 (8th Cir. 1973). In any event, we cannot say that the finding of the judge was made on evidence that supported his determina-

---

1. We note that the Missouri statutes, V.A.M.S. § 491.270, provide:

   A prisoner who shall be brought before any court . . . upon a writ of habeas corpus, to testify, shall be remanded, after having testified, to the prison from which he was taken.

2. Stead emphasizes that the State Judge never specifically remanded him to federal custody.

It is true that he entered no order but the writ directing the marshal to produce Stead itself provided that "after said proceeding" Stead *shall* be returned forthwith to the custody of the Marshal." (Emphasis supplied.) Stead must have been so returned to the marshal because the jail office booked him as "Federal Prisoner Awaiting Transportation." What clearer identification could there be?

tion less than beyond a reasonable doubt. Stead testified in his case on August 30, and it was not until three weeks later—September 21—that he escaped. The nature of his claim, an attack on State sentences after having served them, could not have required his presence for a full three weeks. In addition, being booked on the county jail records as "Federal Prisoner Awaiting Transportation" is without further evidence conclusive proof that his appearance in the case was completed and that he was awaiting the action of the federal marshal to return him to Marion.

### Insanity Defense

■ On his second claim, insanity, Stead at trial called Dr. Earl Dick, a psychiatrist, as his witness. However, Dr. Dick testified that he was unable to reach a conclusion as to Stead's mental defects at the time of the escape. He could find no psychotic or neurotic illness. Once a defendant's mental capacity is put in issue, it becomes a question of fact to be determined by the judge where, as here, a jury was waived. Cf. *Apgar v. United States,* 440 F.2d 733 (8th Cir. 1971). We have read the record and find ample evidence to support the finding of the trial judge. Indeed, Stead's letter to a local paper that he hoped to remain at large sufficiently long to prove that he had been rehabilitated was certainly strong evidence that he had sufficient mental capacity.

### Double Jeopardy

■ This claim appears frivolous. It is true that the Bureau of Prisons made the determination that Stead should forfeit his "good time" in an administrative action. But this does not reach the dignity of former jeopardy. *United States v. Salazar,* 505 F.2d 72 (8th Cir. 1974); *United States v. Williamson,* 469 F.2d 88 (5th Cir. 1972).

Affirmed.