December 14, 1977

## 77–68   MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

### Conspiracy to Impede or Injure an Officer of the United States, 18 U.S.C. § 372

You have requested our opinion concerning the investigative jurisdiction of the Federal Bureau of Investigation (FBI) over threats or acts against Federal officers not covered by 18 U.S.C. §§ 111 and 114 (assaulting or killing Federal officers) or 18 U.S.C. § 351 (congressional assassination, kidnaping, and assault). Specifically, the inquiry is: (1) whether 18 U.S.C. § 372 can be considered as an independent source of the FBI's investigative jurisdiction; (2) who is to be deemed to come within the statutory language "officer of the United States" in § 372; and (3) whether authority exists to investigate individual acts not committed pursuant to a conspiracy of the sort made criminal by this provision.

### 1.   The FBI's Investigative Jurisdiction

Conspiring to impede or injure a Federal officer is forbidden under Federal law; as a "crime against the United States," it is encompassed by the FBI's investigative jurisdiction set forth in 28 U.S.C. § 533(1). *See, also* 28 CFR § 0.85(a)(1976).

Although under § 372 conspiracy has, in the past, generally been charged only in prosecutions also encompassing a substantive offense such as assault, *see, Murphy* v. *United States*, 481 F. 2d 57 (8th Cir. 1973), *United States* v. *Barber*, 429 F. 2d 1394 (3d Cir. 1970), *United States* v. *Burgos*, 328 F. 2d 109 (2d Cir. 1964), § 372 demands no such limitation. Conspiracy is a distinct and independent crime whose elements differ from those of the underlying offense.

*United States* v. *Callanan*, 365 U.S. 587, 593 (1961). The commission of a completed substantive offense is not required to support a conspiracy charge. *United States* v. *Jasso*, 442 F. 2d 1054 (5th Cir.) *cert. denied*, 404 U.S. 845 (1971). The legislative history of § 372, discussed below, in no way suggests that prosecution for this form of conspiracy need vary from the general rule.

Investigative jurisdiction will therefore be sustained so long as a violation of § 372 has clearly occurred or is reasonably suspected, even without the existence of some other Federal offense arising out of the same facts.

### 2. The Meaning of "Officer"

Section 372 provides as follows:

> If two or more persons in any State, Territory, Possession or District conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like means any officer of the United States to leave the place where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder or impede him in the discharge of his official duties, each of such persons shall be fined not more than $5,000 or imprisoned not more than six years, or both.

Although this provision is more than 100 years old, it has been infrequently used. Most reported cases have involved internal revenue agents whose efforts to track down tax-evading operators of illegal stills met with resistance, *see, e.g., United States* v. *Hall,* 342 F. 2d 849 (4th Cir.) *cert. denied,* 382 U.S. 812 (1965); *United States* v. *Barber,* 303 F. Supp. 807 (D. Del. 1969), *aff'd,* 442 F. 2d 517 (3d Cir. 1971), *cert. denied,* 404 U.S. 846 (1971). Nor have there been any significant interpretations of 42 U.S.C. § 1985(1), § 372's civil counterpart, which contains comparable language.

However, the term "office" has been repeatedly defined with regard to its use in Article I, § 9 and Article II, §§ 2 and 3 of the Constitution. The Supreme Court in *United States* v. *Hartwell,* 6 Wall. 385, 393 (1867), provided the following definition: "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties." At other times, the term has been quite narrowly confined to the constitutional context, and a distinction has been drawn between an "officer" and an "employee." *See, Burnap* v. *United States,* 252 U.S. 512 (1920). Although these interpretations provide a starting point for analysis, they are not to be narrowly applied when a statutory scheme evidences the intent of Congress that a broader meaning was intended. *Steele* v. *United States,* 267 U.S. 505, 507 (1925). In that case, for example, the term "officer" was held to include deputy marshals and deputy collectors of customs. *See also* 40 Op. Att'y Gen. 294, 299 (1943).

Although the § 372 formulation, "any office, trust, or place of confidence," bears a strong resemblance to that found in Article I, § 9 ("any

office of Profit or Trust"), a review of the legislative history of the section indicates that a reading broader than that demanded by the constitutional usage must prevail. When first enacted in 1861, the provision relating to officers had a somewhat abbreviated form ("if two or more persons . . . shall conspire together . . . by force, or intimidation, or threat, to prevent any person from accepting or holding any office, or trust, or place of confidence, under the United States . . . [they] shall be guilty of a high crime . . .)." Objection to the multifaceted conspiracy bill, of which this provision was a part, centered on its application to conspiracies to overthrow the Government of the United States; to wit, opponents saw the measure as circumventing the constitutional strictures on treason prosecutions. Senator Trumbull, in defending the bill, stressed that its purpose was "to punish persons who conspire together to commit offenses against the United States," and cited interference with a land agent, a postmaster, and railroad route agents to show the need for the legislation, 56 Cong. Globe, 37th Cong., 1st Sess. 277 (1861). The provision was reenacted in a more expanded form as part of the 1871 post-Civil War effort to enforce the Fourteenth Amendment and to end Ku Klux Klan terrorism. Introduced as an amendment in much its final form after criticism of an initial formulation that sought to bring prosecution of most State crimes within Federal jurisdiction, the measure was designed to protect Federal officers by providing for Federal prosecution whenever they were injured because of or in the course of their duties. Unlike the more general conspiracy provision, 18 U.S.C. § 371, that was enacted in much its present form in 1867, § 372 did not even contain a requirement that an overt act be done in furtherance of the conspiracy before the conspiratorial conduct would become actionable. The broad purpose of protecting the Federal presence as fully as possible therefore supports a broad, rather than narrow, reading of the word "office."

Giving effect to this intention, it is our opinion that the term "officer" appearing in 18 U.S.C. § 372 includes both permanent and temporary, full- and part-time officers and employees of the United States. Ambassador A *a fortiori* comes within this definition, for Article II, § 2 of the Constitution requires the President to appoint, with the advice and consent of the Senate, "Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all *other* Officers of the United States . . . ." [Emphasis added.]

### 3. Individual Acts Not Committed Pursuant to a Conspiracy

The assault on a Federal officer statute, 18 U.S.C. § 111, and the related homicide provision, 18 U.S.C. § 114, make criminal under Federal law attacks on only certain classes of Federal employees. Although a broader provision protecting "any civil official, inspector, agent or other officer or employee of the United States" was proposed by the Attorney General and passed by the Senate in 1934, the current patch-

work pattern of coverage was deliberately retained following conference deliberations and the provision was instead amended so that it would apply to additional classes of personnel (customs and internal revenue officers, immigration inspectors, and immigration patrol inspectors). *See* H.R. Rep. No. 1593, 73d Cong., 2d Sess. (1934). In view of this clear refusal to broaden the coverage of the assault provision, application of § 111 to individual action against unenumerated classes of Federal officers cannot be justified. We are unaware of any other statutory authorization for investigative jurisdiction unless some other Federal offense also is involved. Within the context of your inquiry, we note that the most likely such offense would be violation of 18 U.S.C. § 245(b)(1).

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

277