**UNITED STATES of America**

v.

**Glenda Sue Patterson JIMINEZ and James Ronald Jiminez.**

**No. 78–30091–NA–CR.**

United States District Court,
M. D. Tennessee,
Nashville Division.

May 31, 1978.

Bob Lynch, Jr., Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

Tom R. Meeks, Larry B. Watson, Clarksville, Tenn., for Glenda Sue Patterson Jiminez.

Clark H. Tidwell, Nashville, Tenn., for James Ronald Jiminez.

## MEMORANDUM

MORTON, Chief Judge.

Defendants were indicted in three counts by the federal grand jury. The first count charged defendants with conspiring to introduce marijuana into a federal penal or correctional institution in violation of 18 U.S.C. § 371; the second count charged them with introducing marijuana into a federal penal or correctional institution in violation of 18 U.S.C. § 1791[1] and 28 C.F.R. § 6.1;[2] and the third count charged them with knowingly and intentionally possessing marijuana in violation of 21 U.S.C. § 844(a). According to the indictment, defendants introduced the marijuana into the Sumner County, Tennessee, Jail in which defendant

1. 18 U.S.C. § 1791 provides:

   Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom anything whatsoever, shall be imprisoned not more than ten years.

2. 28 C.F.R. § 6.1 provides:

   The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the warden or superintendent of such Federal penal or correctional institution is prohibited.

James Ronald Jiminez was incarcerated. Defendants have moved to dismiss the first two counts of the indictment on the ground that the Sumner County Jail is not a "Federal penal or correctional institution." In opposition, the government contends that since federal prisoners are incarcerated in the Sumner County facility pursuant to a contract between the United States Bureau of Prisons and Sumner County, authorized by 18 U.S.C. § 4002,[3] the Sumner County Jail has become a "Federal penal or correctional institution" within the meaning of 18 U.S.C. § 1791.

■ It is apparent from the language of both 18 U.S.C. § 1791 and its implementing regulation that an essential element of the crime is that it must be committed at a "Federal penal or correctional institution."[4] The statute is silent, however, as to the scope of this term. No case defines the term for purposes of this statute, and furthermore, there is very little authority on related matters. The court believes, however, that there are several reasons for agreeing with defendants' contention that the Sumner County Jail is not a "Federal penal or correctional institution" under 18 U.S.C. § 1791.

First, no provision of state or federal law, or term of the contract between the Bureau of Prisons and Sumner County, expressly or impliedly states that county jails housing federal prisoners become federal institutions. To the contrary, federal statutes imply that such jails are not federal institutions. For example, one provision, 18 U.S.C. § 4001(b)(1), states: "The control and management of Federal penal and correctional institutions, except military or naval institutions, shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws . . . ." 18 U.S.C. § 4001.[5] The language of the statute is mandatory and sets out what the Attorney General *must* do with regard to federal penal and correctional institutions. In contrast, the Attorney General, through appropriate agencies, may promulgate rules for the treatment of federal prisoners housed in county jails, but can neither promulgate rules for the general government of county jails, nor appoint jailers, officers, or other employees thereof. The fact that the Attorney General is not able to fulfill his statutorily mandated duty with regard to county jails strongly suggests that county jails are not turned into federal institutions by virtue of contracts entered into under 18 U.S.C. § 4002.[6] Furthermore, even though 18 U.S.C. § 4002 authorizes the federal government to contract for periods of not more than three years for the imprisonment of federal prisoners in state or local prisons or jails, no "federal agency or officer thereof has any authority to exercise any control over the day to day manage-

**3.** 18 U.S.C. § 4002 provides in pertinent part:
> For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

**4.** In this vital respect, the instant case is distinguishable from the cases, cited by the government, arising under 18 U.S.C. §§ 751 and 752. In those cases, the critical issue, decided in the government's favor, was whether or not the federal prisoners were in "the custody of the [United States] Attorney General or his authorized representative" at the time of their escape from county jails. Those statutes do not require that the escape be from a "Federal penal or correctional institution." *See United States v. Viger*, 530 F.2d 846 (9th Cir. 1976); *United States v. Stead*, 528 F.2d 257 (8th Cir. 1975), *reh. denied, id., cert. denied*, 425 U.S. 953, 96 S.Ct. 1730, 48 L.Ed.2d 197 (1976).

**5.** Other federal statutes are to the same effect. *See, e. g.*, 18 U.S.C. § 4042 (establishing the duty of the Bureau of Prisons to manage and regulate all federal penal or correctional institutions); Department of State, Justice, and Commerce, The Judiciary and Related Agencies Appropriation Act of 1976, Pub. L. No. 94–121, 89 Stat. 611 (appropriating funds for the operation of federal penal or correctional institutions *and for the supervision of federal prisoners "in non-Federal Institutions"*) (emphasis added).

**6.** *See* note 3, *supra*.

ment of the local institution or over the details of the custody and care of federal prisoners confined therein." *Brown v. United States*, 374 F.Supp. 723, 727 (E.D. Ark.1974); *see Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

At the same time, no statute of the state of Tennessee transforms county jails in to federal institutions. Tennessee Code Annotated § 41–1103 merely states that "the [county] jail is used as a prison for the safekeeping or confinement of . . . persons charged with or convicted of a criminal offense against the United States . . . ." T.C.A. § 41–1105 requires the jailer "to receive and safely keep" federal prisoners. Neither statute, however, surrenders the jails to the federal government.

Consistent with the implications of these federal and state enactments is the contract between the Bureau of Prisons and Sumner County providing for the housing of federal prisoners in the Sumner County Jail. The contract is entitled "Contract for Service By/In a *Nonfederal* Facility." (Emphasis added.) Furthermore, attached to the contract as Exhibit A are "RULES AND REGULATIONS GOVERNING CUSTODY AND TREATMENT OF FEDERAL PRISONERS IN *NONFEDERAL* INSTITUTIONS." (Emphasis added.) Nowhere in the contract or rules and regulations is it said that county jails are to be considered federal institutions. In fact, throughout the documents, institutions such as Sumner County Jail are so often referred to as *nonfederal* institutions that it seems incredible that the government would now contend that the Sumner County Jail is a *federal* penal or correctional institution. Also in accord with this reading of the contract is the fact that by its very terms, the agreement to house federal prisoners can be terminated by Sumner County after thirty days notice: One would not think that a federal institution could sever its relationship with the federal government so easily.

Second, the case law is in disarray, and it offers no controlling precedent and little guidance as to the meaning of "Federal penal or correctional institution" under 18 U.S.C. § 1791. For purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346, and the Civil Rights Act, 42 U.S.C. § 1983, such contracts as that between Sumner County and the Bureau of Prisons do not transform county jails into federal agencies or institutions. In *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), the United States Supreme Court held that the United States was not liable under the FTCA for the negligence of county jail employees that caused the death of a federal prisoner confined in a county jail. The county jail was an independent contractor according to the court, and as such it fell within an exception to the FTCA that exempts the United States from liability for the negligence of independent contractors and their employees. The federal prisoner was housed in a county jail pursuant to a contract such as is involved in the instant case. Clearly, then, the county jail is not a federal agency or institution for purposes of the FTCA.

In *Henderson v. Thrower*, 497 F.2d 125 (5th Cir. 1974), the Fifth Circuit held that a federal prisoner, held in a city jail pursuant to a contract such as that involved in the instant case, could sue the local jail officials and employees under 42 U.S.C. § 1983. The court indicated that the existence of the contract had no effect on the potential liability of the jail officials and employees, and that the acts of the jail staff were "under color of state law" in spite of the contract. Had the local jail been considered a federal institution and the jailkeepers federal employees, it is doubtful that the § 1983 suit would have been allowed. Therefore, it is apparent that the contract did not turn the city jail into a federal agency or institution for purposes of § 1983 suits.

The government quite properly points out that these examples of civil liability suits are distinguishable from the present case, which involves a criminal statute. The court, however, does not offer these cases as dispositive of the issue in this case, but merely to demonstrate how arguments re-

lated and analogous to the government's here have fared in the courts.

In support of its contention that Sumner County Jail is a "Federal penal or correctional institution," the government relies on a line of cases in which state and local jail officials were held in contempt of federal court for their failure to perform properly their duty with respect to federal prisoners committed to their custody. *Ex parte Shores*, 195 F. 627 (D.C.Iowa 1912); *In re Birdsong*, 39 F. 599 (S.D.Ga.1889). In these cases, the courts quoted *Randolph v. Donaldson*, 13 U.S. (9 Cranch) 76, 86, 3 L.Ed. 662, 665 (1815): "For certain purposes, and to certain intents, the state jail lawfully used by the United States may be deemed to be the jail of the United States, and [the jailer] to be [jailer] of the United States." These cases are not directly on point with respect to the issue in this case. They are distinguishable because they did not depend on the interpretation of a term used in a criminal statute, and because they did not involve 18 U.S.C. § 1791 specifically.

■ Finally, the court believes that the most convincing reason for holding that Sumner County Jail is not a "Federal penal or correctional institution" under 18 U.S.C. § 1791 is that otherwise the statute would run afoul of the Due Process Clause of the Fifth Amendment by being unconstitutionally vague as applied to these defendants. The doctrine is firmly established that

> the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). The United States Supreme Court has explained the reasons that underlie this doctrine in the following passage:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. (Footnotes omitted.)

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227–28 (1972).

It seems obvious that if these defendants had introduced marijuana onto the premises of a United States prison or penitentiary there would be no ground to challenge the term "Federal penal or correctional institution" as unconstitutionally vague. In such a case, the term would have such a common and ordinary definition that men of common intelligence would not have to guess at its meaning. Here, however, the government attempts to give the term a surprising meaning. Much of this opinion has been devoted to demonstrating that no statute, no term of the Bureau of Prisons contract, and no relevant case gives anyone any notice that county jails are considered "Federal penal or correctional institutions" for purposes of 18 U.S.C. § 1791. In this respect the case is very similar to *United States v. Diaz*, 499 F.2d 113 (9th Cir. 1974), in which the defendant was charged with appropriating "objects of antiquity" located on federal lands. He had in fact taken from an Indian reservation six-year-old ceremonial masks, which were said to be "objects of antiquity," regardless of their age, because they were related to religious or social traditions of long standing. The court there found that the statute was unconstitutionally vague in that it used "undefined terms of uncommon usage." In the

instant case "Federal penal or correctional institution" is not defined; in common usage the meaning of that term does not include county jails. In light of this, the court finds the conclusion inescapable that fundamental notions of fairness and due process compel the granting of defendants' motions to dismiss the first two counts of the indictment.

An appropriate order will be entered.