## UNITED STATES of America
### v.
### Julio RIOS–FLORES
### No. 02–CR–632–ALL.

United States District Court,
W.D. Texas,
Del Rio Division.

Jan. 21, 2003.

Francisco Morales, Del Rio, TX, Counsel for Julio Rios Flores.

Robert G. Arrambide, Del Rio, TX, Assistant U.S. Attorney.

## ORDER

JUSTICE, Senior District Judge.

## I. BACKGROUND

The defendant, Julio Rios–Flores, has been indicted for a violation of Title 18 U.S.C. 1791(a)(2)(possession of a prohibited item in a federal prison). Defendant was charged with possession of heroin while he was an inmate in the Val Verde Correctional Facility.

The Val Verde Correctional Facility is owned and operated by Wackenhut Corporation. Wackenhut subcontracts with Val Verde County for the use of its facilities as a county jail. In turn, Val Verde County has contracted with the United States Marshals Service and Immigration and Naturalization Service through an intergovernmental agreement to house federal inmates and detainees. Currently, the facility contains mostly federal prisoners and detainees but also contains county prisoners.

While the phenomena of private operation of jails and prisons is not new,[1] Texas

---

1. See *Richardson v. McKnight*, 521 U.S. 399, 405, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (discussing private ownership and management of jails in the 18th and 19th Centuries).

saw a resurgence of prison privatization beginning in the 1980s. Texas currently houses many state and federal inmates in privately owned and run facilities.[2] Some may contract directly with the government while others contract with the state or local officials.

## II. ANALYSIS

■ The question of whether a private prison facility is a federal penal facility within Title 18 U.S.C. 1791(a)(2) is a question of first impression for this court. In answering this question, the court first looks to the plain text of the statute. The relevant portion of Title 18 U.S.C. 1791 reads:

> (a) Offense.—Whoever—(1) in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so; or (2) being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object; shall be punished as provided in subsection (b) of this section.

Section (d)(4) defines the term "prison" as "a Federal correctional, detention, or penal facility."

In further determining what is "a Federal correctional, detention, or penal facility", Fourth Circuit law is instructive. It suggests that the ownership of the facility rather than the nature of the inmates controls the nature of the institution. *See generally United States v. Jiminez*, 454 F.Supp. 610 (M.D.Tenn.1978); *United States v. Gibson*, 880 F.2d 795, 796 (4th Cir.1989)(distinguishing facilities operated by the District of Columbia and those operated by the Federal government for the purposes of 18 U.S.C. 1791). This distinc-

tion makes sense as the state has the greatest interest in the contraband in a state facility regardless of whether the inmates are federal or state detainees. While *Jiminez* is not perfectly analogous, as the state government may have a lesser interest in a privately run facility with mainly federal inmates and *Jiminez* does not clearly indicate the relevant defendant was a federal detainee, the state still possesses greater regulatory authority than the federal government over such a facility.[3] While the government contends that federal detainees will suffer from disparate treatment based on whether they are housed in a federal or non-federal facility, this seems preferable to allowing disparate treatment of federal and state detainees in the same facility based on the nature of their underlying conviction in federal or state court.

The legislative intent surrounding Section 1791 supports this distinction of who has primary responsibility for the facility. The legislative history for Title 18 U.S.C. 1793 clarifies that

> [like the offense in section 1791, it] was deliberately written to apply only to inmates (whether convicted in a federal or state court) in a federal penal institution. The committee has not sought to extend coverage to federal defendants incarcerated in state institutions, believing that the primary interest in barring contraband from those institutions lies with state or local officials.

S.Rep. No. 225, 98th Cong., 2d Sess. 382, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3522.

This distinction also makes sense with general provisions for detention contained

---

**2.** See Bureau of Justice Statistics, U.S. Dep't. Of Justice, *Bulletin: Prisoners in 2000* at 7 tbl.8 (2001).

**3.** This court does not take a position on whether a privately run prison that contracted directly with the United States would be considered a federal penal facility as that question is not presented here.

454

in the United States Code. For example, in Title 18 U.S.C. Section 4013, titled "Support of United States prisoners in non-Federal institutions," the Code clearly indicates that a facility like the Val Verde Correctional Facility is non-Federal:

(a) The Attorney General, in support of United States prisoners in **non-Federal institutions**, is authorized to make payments from funds appropriated for the support of United States prisoners for

. . . .

(3) the housing, care, and security of persons held in custody of a United States marshal pursuant to Federal law under agreements with states or **local units** of government or **contracts with private entities**; *(emphasis added)*

Furthermore, Title 18 U.S.C. Section 4013 goes on to contemplate state regulation of private facilities:

(B)(2) In order to be eligible for a contract for the housing, care and security of persons held in custody of the United States marshals pursuant to Federal law and funding under subsection (a)(3), a private entity shall

(C) comply with all applicable State and local laws and regulations.

Thus, for the purposes of 1791, the Val Verde Correctional Facility is not "a Federal correctional, detention, or penal facility."

■ Moreover, the law requires that "the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Connally v. General Const. Co,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). This accords with notions of fair play and due process. *Id.* As there is neither a well-settled common-law nor technical meaning of the term "prison" to include privately owned, state contracted facilities such as Val Verde

County Correctional facility, to read it as such would violate the vagueness doctrine under Due Process. *Id.*

While the government argues that the conviction of a federal crime provides notice to detainees that they are subject to the federal contraband statute, the court does not find the Attorney General's role clear in this instance. Title 18 U.S.C 4042 states that "The Bureau of Prisons, under the direction if the Attorney General, shall(1) have charge of the management and regulation of all Federal penal and correctional institutions; (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offense against the United States." Yet, in many instances, the federal government contracts out those duties. For example, the intergovernmental agreement governing this facility establishes that the local government rather than the federal government is to provide federal prisoners with medical care and services. *See Exhibit B.* Similarly, the local government must provide "adequate trained jail staff" and "full coverage of all security posts and full surveillance of inmates." While the contract is silent as to whether state or federal contraband statutes apply, it seems obvious that those who are running the prison have the clearest interest in prohibiting contraband and maintaining discipline.

This court is concerned that its ruling may demonstrate a potential gap in coverage of contraband statutes. The Texas law governing possession of contraband states

(d) a person commits an offense if the person possesses a controlled substance or dangerous drug while

(1) on property owned, used, or controlled by the Texas Department of Criminal Justice; or

(2) in a correctional facility.

Tex. Penal Code Ann. § 38.11 (West 2001). Texas state law goes on to define a correctional facility as:

a place designated by law for the confinement of a person arrested for, charged with, or convicted of a criminal offense. The term includes:

(A) a municipal or county jail;

(B) a confinement facility operated by the Texas Department of Criminal Justice;

(C) a confinement facility operated under contract with any division of the Texas Department of Criminal Justice; and

(D) a community corrections facility operated by a community supervision and corrections department.

Tex. Penal Code Ann. § 1.07 (West 2001). This court is of the opinion that the state statute ought to include Val Verde Correctional Facility under its statutes regardless of the nature of its inmates. Yet the Texas Attorney General presumes that detention centers that house solely federal inmates are "federal penal and correctional institution[s] subject only to the United States Attorney General", and, at her direction, to the federal Bureau of Prisons. *See Attorney General Opinion No. DM–404,* 1996 W.L. 525315, *2 (Tex.A.G.1996)(describing a detention center run by a corporation that the City of Eden leases to the federal government as a federal penal institution). While Val Verde Correctional Facility usually houses both state and federal offenders, there may be times where it houses only federal detainees and inmates. Moreover, the mere possibility of such a gap in coverage of the federal and state contraband statutes does not convince this court that the federal statute applies in this instance.[4]

Thus, defendant's motion to dismiss the indictment shall be, and is hereby, **GRANTED**; and such indictment shall be, and is hereby, **DISMISSED**, without prejudice.

---

**4.** It is the role of the legislature rather than the court to rectify such gaps. In the past, the Texas legislature has shown itself amply suited to do so as when it expanded coverage of escape laws to cover privately owned prisons.