KEY ET AL. *v.* DOYLE ET AL.

No. 76–1057.   Argued October 5, 1977—Decided November 14, 1977

*Floyd Willis III* argued the cause and filed a brief for appellants.

*Carl F. Bauersfeld* argued the cause for appellees.   With him on the brief for appellee Calvary Baptist Church was *Charles H. Burton.   William A. Glasgow, Stephen A. Trimble,* and *Nicholas D. Ward* filed a brief for appellee St. Matthews Cathedral.*

MR. JUSTICE STEWART delivered the opinion of the Court.

Sallye Lipscomb French died 20 days after executing a will leaving most of her estate to certain churches in the District of Columbia.   Section 18–302 of the D. C. Code (1973) voids

*\*Leo Pfeffer* and *Paul S. Berger* filed a brief for the American Jewish Congress as *amicus curiae* urging affirmance.

religious devises and bequests made within 30 days of death.[1] Prevented by this statutory provision from carrying out the terms of the will, appellee Doyle as executor sought instructions in the Probate Division of the Superior Court of the District of Columbia. Both that court and the District of Columbia Court of Appeals held the statute unconstitutional.[2] The decedent's heirs and next of kin brought an appeal to this

---

[1] Section 18–302 states:

"A devise or bequest of real or personal property to a minister, priest, rabbi, public teacher, or preacher of the gospel, as such, or to a religious sect, order or denomination, or to or for the support, use, or benefit thereof, or in trust therefor, is not valid unless it is made at least 30 days before the death of the testator."

This provision originated in the Organic Act of 1801, 2 Stat. 103, ch. 15, § 1. It was amended by Congress as recently as 1965. 79 Stat. 688.

[2] The Superior Court opinion is unpublished. The opinion of the Court of Appeals appears at *Estate of French*, 365 A. 2d 621 (1976).

Stressing that the statute "is directed only to religious groups and practitioners," the Superior Court held the statute to be "an invalid infringement of the free exercise of religion provisions of the First Amendment" and "invalid as a denial of due process guaranteed by the Fifth Amendment."

The D. C. Court of Appeals invalidated the statute only under the Due Process Clause of the Fifth Amendment. The majority concluded "that the classification established by §18–302 [religious legatees versus all others] has no rational relationship to the purpose of the legislation and hence denies religious legatees equal protection of the law." *Id.*, at 624.

Six States have somewhat similar statutes, although none of them is restricted to religious bequests and devises. Fla. Stat. § 732.803 (1976); Ga. Code § 113–107 (1975); Idaho Code § 15–2–615 (Supp. 1977); Miss. Code Ann. § 91–5–31 (1973); Mont. Rev. Codes Ann. § 91–142 (1964); Ohio Rev. Code Ann. § 2107.06 (1976). As stated above, the D. C. statute's singular focus on religious beneficiaries is apparently what prompted the Superior Court and the Court of Appeals to declare it unconstitutional. Thus the decisions of the trial and appellate courts in this case do not necessarily raise doubts about the constitutionality of the somewhat similar statutes of the other six jurisdictions.

Court under 28 U. S. C. § 1257 (1), which provides for review by appeal in cases "where is drawn in question the validity of a . . . statute of the United States and the decision is against its validity." [3]   We postponed consideration of the question of our appellate jurisdiction to the hearing of the case on the merits.   430 U. S. 929.   Because we conclude that a law applicable only in the District of Columbia is not a "statute of the United States" for purposes of 28 U. S. C. § 1257 (1), we dismiss the appeal for lack of jurisdiction.

Before 1970 the judgments of the trial courts of the District of Columbia were appealable to the United States Court of Appeals.[4]   Ultimate review in this Court was available under 28 U. S. C. § 1254, which was applicable to all of the 11

---

[3] Title 28 U. S. C. § 1257 states:

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

"(1) By appeal, where is drawn in question the validity of a treaty or statute of the United States and the decision is against its validity.

"(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its' being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.

"(3) By writ of certiorari, where the validity of a treaty or statute of the United States is drawn in question or where the validity of a State statute is drawn in question on the ground of its being repugnant to the Constitution, treaties or laws of the United States, or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of, or commission held or authority exercised under, the United States.

"For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."

[4] The jurisdiction of the local courts substantially overlapped that of the federal courts in the District before 1970. See *Palmore* v. *United States,* 411 U. S. 389, 392 n. 2 (1973).   Appeals from all these courts were channeled through the Court of Appeals for the District of Columbia, which became the United States Court of Appeals for the District of Columbia Circuit in 1934.   Ch. 426, 48 Stat. 926.

Federal Courts of Appeals.[5]  A right of appeal to this Court from the United States Court of Appeals for the District of Columbia Circuit thus existed only where that court had

[5] Title 28 U. S. C. § 1254 states:

"Cases in the courts of appeals may be reviewed by the Supreme Court by the following methods:

"(1) By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree;

"(2) By appeal by a party relying on a State statute held by a court of appeals to be invalid as repugnant to the Constitution, treaties or laws of the United States, but such appeal shall preclude review by writ of certiorari at the instance of such appellant, and the review on appeal shall be restricted to the Federal questions presented;

"(3) By certification at any time by a court of appeals of any question of law in any civil or criminal case as to which instructions are desired, and upon such certification the Supreme Court may give binding instructions or require the entire record to be sent up for decision of the entire matter in controversy."

Section 1254 was largely derived from §§ 239 and 240 of the Judiciary Act of 1925, 43 Stat. 938.

Before 1925, there was a right of appeal to the Supreme Court from the Court of Appeals of the District of Columbia (predecessor to the United States Court of Appeals) in cases involving the constitutionality of local statutes, but not in cases involving the construction of local statutes. This rule arose from a somewhat strained construction given the jurisdictional statute of 1911, 36 Stat. 1159, § 250. Paragraph three of that section provided for appeals from the District's courts in "cases involving . . . the constitutionality of any law of the United States . . . ." Paragraph six provided for appeals in "cases in which the construction of any law of the United States is drawn in question by the defendant." The Court construed the same words—"any law of the United States"— differently in the two paragraphs.

In *American Security & Trust Co.* v. *District of Columbia Comm'rs*, 224 U. S. 491 (1912), the Court concluded that a congressional Act applicable solely to the District of Columbia was not a "law of the United States" for purposes of paragraph six. Mr. Justice Holmes' opinion for the Court reasoned that "all cases in the District arise under acts of Congress and probably it would require little ingenuity to raise a question of construction in almost any one of them." By restricting paragraph six to

invalidated a state statute. All other cases, including those challenging the validity of local statutes of the District of Columbia, were reviewable here by writ of certiorari.[6]

laws of national scope, the Court thought that its jurisdiction would be "confined to what naturally and properly belongs to it." *Id.,* at 494–495.

In *Heald* v. *District of Columbia,* 254 U. S. 20 (1920), the Court construed paragraph three to allow appeals in cases involving the constitutionality of local statutes. This paragraph re-enacted "provisions of prior statutes which had been construed as conveying authority to review controversies concerning the constitutional power of Congress to enact local statutes." *Id.,* at 22–23. Although it meant interpreting the identical words in the same jurisdictional statute in different ways, the Court held that the prior construction should continue "in the absence of plain implication to the contrary." *Id.,* at 23.

[6] Or by certification. See 28 U. S. C. § 1254 (3), set out in n. 5, *supra.* Some cases arising in the District reached this Court by routes other than § 1254. In *Shapiro* v. *Thompson,* 394 U. S. 618 (1969), the Court heard direct appeals from several three-judge District Court decisions, one of them a decision in the District of Columbia holding a D. C. Code provision unconstitutional. After noting that 28 U. S. C. § 2282 (which has since been repealed) required a three-judge court to hear a challenge to the constitutionality of *"any* Act of Congress," the Court without further discussion concluded that it saw "no reason to make an exception for Acts of Congress pertaining to the District of Columbia." 394 U. S., at 625 n. 4.

In *United States* v. *Vuitch,* 402 U. S. 62 (1971), the Court reviewed a District Court judgment holding a criminal provision of the D. C. Code unconstitutional. The United States had taken a direct appeal to the Supreme Court under 18 U. S. C. § 3731 (1964 ed.), which had been recently amended, but which was still applicable to that case. Section 3731 allowed direct appeals "in all criminal cases . . . dismissing any indictment . . . where such decision . . . is based upon the invalidity . . . of the statute upon which the indictment . . . is founded." By a margin of 5–4, the Court held that the word "statute" in § 3731 encompassed D. C. Code provisions. Stressing the nationwide confusion surrounding criminal statutes like the one in question, the Court reasoned that the purpose underlying § 3731 "would not be served by our refusing to decide this case now after it has been orally argued." 402 U. S., at 66. Writing for the four dissenters, Mr. Justice Harlan attributed the Court's expansive

The District of Columbia Court Reform and Criminal Procedure Act of 1970 [7] substantially modified the structure and jurisdiction of the courts in the District, but there is no indication that Congress intended these changes to enlarge the right of appeal to this Court from the courts of that system. The aim of the Act was to establish "a Federal-State court system in the District of Columbia analogous to court systems in the several States." H. R. Rep. No. 91–907, p. 35 (1970). The Act provided that cases would no longer have to proceed from the local courts to the United States Court of Appeals, and then to this Court under § 1254. Instead, the judgments of the newly created local Court of Appeals were made directly reviewable here, like the judgments of state courts. [8] Accordingly, § 1257, the jurisdictional provision concerning Supreme Court review of state-court decisions, was amended to include the District of Columbia Court of Appeals as "the highest court of a State." [9]

In *Palmore* v. *United States*, 411 U. S. 389 (1973), we recognized that the analogy between the local courts of the District and the courts of the States was not perfect. Although Congress had expressly classified the District of Columbia Court of Appeals as a state court, it had not indicated that D. C. Code provisions should be treated as state statutes. Thus, where the District of Columbia courts had upheld a

reading of this jurisdictional provision to the fact that it had been amended and would have no effect upon subsequent cases. *Id.*, at 93.

In both these cases, the Court concluded that D. C. Code provisions were federal statutes for purposes of the applicable appellate provisions. However, each jurisdictional provision is to be interpreted in the light of its own antecedents, purposes, and context. See *American Security & Trust Co.* v. *District of Columbia Comm'rs, supra.* The special circumstances of these two cases thus render them of little aid in the task of construing § 1257 (1).

[7] 84 Stat. 473.

[8] 84 Stat. 475, § 111.

[9] 84 Stat. 590, § 172. See n. 3, *supra.*

local statute against constitutional attack, we concluded that an appeal as of right would not lie to this Court under § 1257 (2), which applies to state-court decisions rejecting constitutional challenges to state statutes. Underlying our decision was the long-established principle that counsels a narrow construction of jurisdictional provisions authorizing appeals as of right to this Court, in the absence of clear congressional intent to enlarge the Court's mandatory jurisdiction. 411 U. S., at 396.

The legislative history of the 1970 Act is as unenlightening about the applicability of § 1257 (1) as it is about that of § 1257 (2). In the Senate Committee hearings on an early version of the Act, there was one brief reference to § 1257:

"The Chairman [Senator Tydings]. . . . On page 3, section 11–102 there is a provision relating to appeal:

" 'The highest court of the District of Columbia is the District of Columbia Court of Appeals. For purposes of *appeal* to the Supreme Court and other purposes of law, it shall be deemed the highest court of the state.' [Emphasis added.]

"Now, my question to you is a question raised about that language. Is that sufficiently broad to allow the Supreme Court review by certiorari?

"Mr. Kleindienst. We believe so.

"The Chairman. As well as appeal pursuant to 28 U. S. C. 12750 [*sic*]? Because the language, you know, leaves out certiorari. Certiorari is an important vehicle to reach the Supreme Court.

"Mr. Kleindienst. We believe the language covers certiorari but it would be easy to clarify." [10]

_____
[10] Hearings on S. 1066, S. 1067, S. 1214, S. 1215, S. 1711, and S. 2601 (Reorganization of the District of Columbia Courts) before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 91st Cong., 1st Sess., 1159 (1969). The draft of the bill offered by the administration apparently had used the word "appeal"

Although Senator Tydings seems to have assumed that both the appeal and certiorari provisions of § 1257 would apply to the judgments of the District of Columbia Court of Appeals, it is not clear whether he thought the appeal provision of § 1257 (1) or that of § 1257 (2) would govern. And if he had in mind § 1257 (1), he made no reference to possible distinctions between federal statutes of solely local concern and those of broader scope. Nowhere in the legislative history do we find further discussion of this point.

The omission is understandable. The question had not arisen before the 1970 reorganization because § 1257 then applied only to state courts, which seldom if ever confronted federal statutes of wholly local application. Although the courts of the District were accustomed to seeing such federal statutes, the jurisdictional provision that applied to them did not mention "statutes of the United States." Rather, § 1254 divides cases from the courts of appeals into two categories— those invalidating state statutes and all others.

Although the precise question at issue in this case thus seems to have escaped the attention of Congress, it was clear that a general right of appeal from the District of Columbia courts to this Court on questions concerning the validity of local law did not exist at the time of the 1970 reorganization.[11] In the absence of an express provision so ordaining, it cannot be assumed that Congress intended to enlarge this Court's mandatory appellate jurisdiction by simply shifting review of District of Columbia court judgments from § 1254 to § 1257.[12]

---

in the broad sense of direct review. The provision was later revised to reflect that intention:

"Final judgments and decrees of the District of Columbia Court of Appeals are reviewable by the Supreme Court of the United States in accordance with section 1257 of title 28, United States Code." 84 Stat. 475.

[11] Cf. n. 6, supra.

[12] As part of the 1970 Court Reform Act, Congress enacted 28 U. S. C. § 1363, which provides:

"For the purposes of this chapter, references to laws of the United States

Indeed, the purposes of the 1970 Act strongly imply the contrary. As we noted in *Palmore*, Congress intended "to establish an entirely new court system with functions essentially similar to those of the local courts found in the 50 States of the Union with responsibility for trying and deciding those distinctively local controversies that arise under local law, including local criminal laws having little, if any, impact beyond the local jurisdiction." 411 U. S., at 409.

This Court's mandatory appellate jurisdiction over state-court judgments under § 1257 is reserved for cases threatening the supremacy of federal law. When state courts invalidate state statutes on federal grounds, uniformity of national law is not threatened and there is no automatic right of appeal to

---

or Acts of Congress do not include laws applicable exclusively to the District of Columbia."

Chapter 85 of Title 28, to which § 1363 refers, governs the jurisdiction of the United States district courts. The enactment of this section hardly implies that Congress must have intended that references to "laws of the United States" found in all other jurisdictional chapters and sections (including § 1257) *would* include provisions of the D. C. Code.

Before 1970, the district courts had jurisdiction over some cases arising under D. C. Code provisions. See n. 4, *supra*. This jurisdiction rested on three jurisdictional provisions of the D. C. Code (§§ 11–521, 11–522, 11–523 (1967)) and on various jurisdictional provisions found in ch. 85, many of which referred to "statutes of the United States" or "Acts of Congress." The 1970 Act repealed these three jurisdictional provisions of the D. C. Code and also enacted 28 U. S. C. § 1363 as a conforming amendment to assure the removal from the jurisdiction of the District Court for the District of Columbia of those cases arising under D. C. Code provisions. In view of its limited focus, the enactment of § 1363 cannot rationally support the inference that Congress examined other jurisdictional provisions and decided, as to them, that references to "statutes of the United States" *should* include D. C. Code provisions. Such an inference would be especially tenuous if applied to § 1257, because § 1257 did not previously govern cases questioning the validity of D. C. Code provisions. See *supra*, at 66. In any event, a clearer indication of congressional intent than this sort of negative implication is required to extend this Court's mandatory appellate jurisdiction.

this Court. From the analogy of the local D. C. courts to state courts drawn by Congress in the 1970 Act, it follows that no right of appeal should lie to this Court when a local court of the District invalidates a law of exclusively local application.[13] From such judgments and from similar state-court judgments, there is no appeal to this Court, but only review by writ of certiorari according to the terms of § 1257 (3).[14]

This construction of § 1257 (1) neither enlarges nor reduces this Court's mandatory appellate jurisdiction as a result of the 1970 Act. It gives litigants in the courts of the District the same right of review in this Court as is enjoyed by litigants in the courts of the States.

For the reasons expressed in this opinion, the appeal is dismissed for lack of jurisdiction.[15]

*It is so ordered.*

MR. JUSTICE WHITE, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACKMUN, and MR. JUSTICE POWELL join, dissenting.

In *Palmore* v. *United States,* 411 U. S. 389 (1973), this Court held that provisions of the District of Columbia Code enacted by the United States Congress were not "state laws" within the meaning of 28 U. S. C. § 1257 (2) and that a decision of the D. C. Court of Appeals upholding such provisions was reviewable in this Court only on certiorari. Today, this Court holds that an Act of Congress relating exclusively to the

---

[13] It is more the nature of the D. C. Code than its limited geographical impact that distinguishes it from other federal statutes. Unlike most congressional enactments, the Code is a comprehensive set of laws equivalent to those enacted by state and local governments having plenary power to legislate for the general welfare of their citizens.

[14] Of course, 1257 (1) would be applicable if the District of Columbia Court of Appeals should invalidate a federal law other than a provision of the D. C. Code.

[15] Treating "the papers whereon the appeal was taken . . . as a petition for writ of certiorari," 28 U. S. C. § 2103, we deny the petition. See n. 2, *supra.*

District of Columbia is also not a "statute of the United States" within the meaning of 28 U. S. C. § 1257 (1). Thus, even where the D. C. Court of Appeals strikes down such a congressional enactment on federal constitutional grounds, there is no right of direct appeal to this Court, review being limited to this Court's discretionary acceptance of a writ of certiorari. Because I believe that this holding is inconsistent with the prior decisions of this Court and contrary to the congressional scheme determining Supreme Court jurisdiction, I dissent from the majority opinion.

I

In the early years of the judicial system, all cases from the federally created court in the District of Columbia involving more than a specified jurisdictional amount were appealable to the United States Supreme Court.[1]    In 1885, the jurisdictional amount was raised to $5,000, but special provision was made for appeal without regard to the sum in dispute in

> "any case . . . in which is drawn in question the validity of a treaty or statute of or an authority exercised under the United States . . . ."    Ch. 355, 23 Stat. 443.

Since the enactment of this statute, this Court has consistently held that a constitutional attack upon a congressional enactment relating exclusively to the District of Columbia draws into question a "statute" or "law" of the United States within the meaning of the relevant jurisdictional statute.

This view underlies the opinion in *Baltimore & Potomac R. Co.* v. *Hopkins,* 130 U. S. 210 (1889), in which an absence of jurisdiction was found for another reason.[2]    It was made

---

[1] See 2 Stat. 106 (judgments of the Circuit Court of the District of Columbia in excess of $100 could be reviewed by appeal or writ of error); ch. 39, 3 Stat. 261 (raising jurisdictional amount to $1,000); 12 Stat. 764 (decisions of the Supreme Court of the District of Columbia, which replaced the Circuit Court, would be reviewable on the same basis).

[2] The Court found that the validity of the Act involved there had not been drawn into question.

explicit in *Parsons* v. *District of Columbia,* 170 U. S. 45 (1898), in which the Court upheld its jurisdiction over a challenge to a congressional scheme for water main assessments in the District of Columbia. "[W]e think it plainly appears," the Court stated, "that the validity of statutes of the United States and of an authority exercised under the United States was drawn into question in the court below . . . ." *Id.,* at 50. Accord, *Smoot* v. *Heyl,* 227 U. S. 518 (1913) (upholding Supreme Court jurisdiction over a challenge to the validity of a District of Columbia party-wall regulation).

In 1911 the Congress abolished this Court's jurisdiction over appeals from the District of Columbia predicated on jurisdictional amount, but added a provision for appeal in cases in which "the construction of any law of the United States is drawn in question by the defendant." 36 Stat. 1159. In *American Security & Trust Co.* v. *District of Columbia Comm'rs,* 224 U. S. 491 (1912), the Court construed this provision not to include laws pertaining exclusively to the District of Columbia, because the alternative construction would have defeated the congressional purpose "to effect a substantial relief to this court from indiscriminate appeals where a sum above $5,000 was involved." *Id.,* at 495. Nevertheless, the Court noted that "there is no doubt that the special act of Congress was in one sense a law of the United States" and the Court's opinion distinguished the statutory provision pertaining to appeals in "Cases involving the constitutionality of any law of the United States."

In *Heald* v. *District of Columbia,* 254 U. S. 20 (1920), the Court squarely held once again that a constitutional attack on a federal statute pertaining exclusively to the District of Columbia drew into question the validity of a "law of the United States" within the meaning of the appeal statute. The Court explicitly rejected the suggestion that *American Security & Trust Co.* was controlling, since that case itself had recognized a "difference between the two subjects." 254 U. S.,

at 22. The Court also noted that the current appeal statute had been intended to "reenact provisions of prior statutes which had been construed as conveying authority to review controversies concerning the constitutional power of Congress to enact local statutes." *Id.*, at 22–23, citing *Parsons* v. *District of Columbia, supra,* and *Smoot* v. *Heyl, supra.* Since the *Heald* decision, this Court has not commented further on the issue raised therein,[3] but commentators have concluded that a "federal statute, for purposes of § 1257 (1), plainly means enactments by the Congress of the United States, including those which are limited in operation to the District of Columbia . . . ." R. Stern & E. Gressman, Supreme Court Practice 82 (4th ed. 1969). Accord, Boskey, Appeals from State Courts under the Federal Judicial Code, 30 Va. L. Rev. 57, 59 (1943).[4]

## II

It was against this background that Congress enacted the District of Columbia Court Reform and Criminal Procedure Act of 1970. 84 Stat. 473. It established a separate court

---

[3] Between 1925 and 1970 all cases from local District of Columbia courts were channeled through the Court of Appeals for the District of Columbia, which later became the United States Court of Appeals for the District of Columbia Circuit. See *ante,* at 61 n. 4. Since that court was clearly a federal court composed of judges tenured under Art. III of the Constitution, there was no need for mandatory review of decisions of that court invalidating federal statutes. Hence its decisions were reviewable in this Court on the same basis as the decisions of the other federal courts of appeals. 43 Stat. 938.

[4] As the majority recognizes, see *ante,* at 63–64, n. 6, this Court has recently ruled in other contexts that D. C. Code provisions are "statutes of the United States," *United States* v. *Vuitch,* 402 U. S. 62 (1971) (criminal appeal statute), and "Acts of Congress," *Shapiro* v. *Thompson,* 394 U. S. 618 (1969) (three-judge court appeals). While these decisions may not be directly relevant here, they confirm the traditional understanding that— in the absence of contrary congressional command—congressional enactments dealing with the District of Columbia are to be treated like other federal laws.

72

system for the District of Columbia, headed by the District of Columbia Court of Appeals. Appeals from that court to the United States Supreme Court were to be regulated by 28 U. S. C. § 1257, which was amended to provide:

> "For the purposes of this section, the term 'highest court of a State' includes the District of Columbia Court of Appeals."

The Act also included a provision specifying that for purposes of determining the original jurisdiction of the district courts, "references to laws of the United States or Acts of Congress do not include laws applicable exclusively to the District of Columbia." 28 U. S. C. § 1363, added by § 172 (c)(1) of the Reorganization Act, 84 Stat. 590. No proviso was added to 28 U. S. C. § 1257 (1) to indicate that the reference to "statute of the United States" in that provision was not to include federal laws pertaining to the District of Columbia.

The clear implication of Congress' action with respect to § 1257 was that statutes relating to the District of Columbia would continue to be viewed, as they had been in the past, as statutes of the United States. Although Congress amended § 1257, characterizing the District of Columbia Court of Appeals as a "state court," it did not also insert a restrictive provision similar to that limiting the jurisdiction of the district courts with respect to D. C. Code provisions. The legislative history gives no indication that Congress disagreed with the prior decisions of this Court holding that a constitutional attack upon a federal law local in operation would be viewed as a challenge to a "statute" or "law of the United States" within the meaning of the applicable appeal statute. In these circumstances, one can only conclude that the Congress intended that decisions invalidating laws concerning the District of Columbia would receive the same scrutiny from this Court as decisions invalidating other federal laws.[5]

---

[5] The majority argues that, as of 1970, no general right of appeal

This Court's decision in *Palmore* v. *United States,* 411 U. S. 389 (1973), supports—if indeed it does not require—that conclusion. The Court there held that provisions of the District of Columbia Code enacted by Congress were not "statutes of a state" within the meaning of § 1257 (2) and that D. C. court decisions upholding these laws would be reviewable only on certiorari. The Court reasoned:

> "We are entitled to assume that in amending § 1257, Congress legislated with care, and that had Congress intended to equate the District Code and state statutes for the purposes of § 1257, it would have said so expressly and not left the matter to mere implication." 411 U. S., at 395.

The Court suggested that an express provision " 'would have been easy,' " *id.,* at 395 n. 5, quoting *Farnsworth* v. *Montana,*

existed from District of Columbia courts to this Court in constitutional challenges to D. C. Code provisions and that "it cannot be assumed that Congress intended to enlarge this Court's mandatory appellate jurisdiction by simply shifting review of District of Columbia court judgments from § 1254 to § 1257." *Ante,* at 66. This argument is flawed for two reasons. First, as the majority opinion itself concedes, the shift from § 1254 to § 1257 *did* enlarge this Court's mandatory appellate jurisdiction, by including cases arising in the District of Columbia which invalidated federal statutes of national scope. See *ante,* at 68 n. 14. Second, and more importantly, the shift in review provisions was not a "simple" or technical change, but rather basic to the whole concept of the D. C. court reorganization. The law established the District of Columbia court system as an independent, local court system. Congress amended § 1257 to make that point unmistakably clear. By virtue of inclusion within § 1257, the decisions of the District of Columbia Court of Appeals would no longer be filtered through the United States Court of Appeals, but would be appealable as state decisions to the United States Supreme Court. Since the scope of appellate jurisdiction specified by § 1257 for state-court decisions is different from that provided under § 1254 for decisions of the United States courts of appeals, there can be little doubt that Congress effected a change in this Court's mandatory appellate jurisdiction.

129 U. S. 104, 113 (1889), and pointed out several exceptions for the District of Columbia within the Federal Judicial Code, including the provision added by the 1970 Act excluding federal statutes relating to the District of Columbia from the original jurisdiction of the district courts.

This reasoning obviously applies with even greater force to the language of § 1257 (1). Had Congress wished to exclude laws relating to the District of Columbia, it could have used almost precisely the same device as was used with respect to district court jurisdiction. "Jurisdictional statutes are to be construed 'with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Palmore* v. *United States, supra,* at 396, quoting *Cheng Fan Kwok* v. *INS,* 392 U. S. 206, 212 (1968).

Read together with *Palmore,* the effect of this Court's decision is to put District of Columbia statutes in a unique class: They are neither statutes of a State nor statutes of the United States. Whether the District of Columbia Court of Appeals upholds them or strikes them down, there is no appeal to this Court. If Congress had intended that its enactments relating to the District of Columbia were to be treated as mongrel statutes, distinct from the recognized classifications of the Judicial Code, it would surely have said so.[6]

---

[6] The majority's construction of "statute of the United States" in § 1257 (1) is also disturbing because it may ultimately undermine this Court's certiorari jurisdiction over cases from the D. C. Court of Appeals. The majority does not explain its rationale for assuming certiorari jurisdiction in this case. Presumably it views this case as one in which a "right" has been "specially set up or claimed under the Constitution" within the meaning of § 1257 (3). However, in cases involving the *construction* of federal laws dealing with the District of Columbia, that approach would not be available. While there is provision in § 1257 (3) for cases in which the right is derived from a "statute" of the United States, invocation of that provision would require that the Court interpret identical words in the jurisdictional statute in two different ways, a practice the majority evidently disapproves. See *ante,* at 62–63, n. 5. Thus, this

## III

Appellee St. Matthew's Cathedral recognizes that this Court's mandatory jurisdiction over appeals of state decisions invalidating federal laws was designed to assure that national legislation would not erroneously be set aside by local courts. Appellee argues that there is no necessity for such review of the decisions of the District of Columbia Court of Appeals because "it is an Article I court over which Congress has ple-. nary power." Brief for Appellee St. Matthew's Cathedral 11. I have some doubt as to whether that power could or should be used in the manner that appellee appears to contemplate. In any event, Congress, in amending § 1257, has made clear that the District of Columbia Court of Appeals should be regarded as the "highest court of a State." Appellee's argument, which is predicated on the notion that the District of Columbia Court of Appeals is a type of federal court, must therefore be rejected.

Nor do I agree that we should view federal legislation relating to the District of Columbia as not sufficiently national in significance to merit mandatory review. We are not free to disregard § 1257 (1). Moreover, the clause giving the Congress power to legislate for the District of Columbia stands beside the other enumerated powers of Congress in Art. I, § 8, of the United States Constitution. " 'The object of the grant of exclusive legislation over the district was . . . national in the highest sense, and the city organized under the grant became the city, not of a state, not of a district, but of a nation.' " *O'Donoghue* v. *United States,* 289 U. S. 516, 539–540 (1933), quoting *Grether* v. *Wright,* 75 F. 742, 756–757

Court may ultimately be left with no jurisdiction whatsoever over cases in which the D. C. Court of Appeals construes a federal statute dealing with the District of Columbia. It is highly improbable that Congress would have given such free rein in interpreting federal laws to a court which it regarded as "the highest court of a State" or that it would have so restricted this Court's appellate jurisdiction without expressly saying so.

(CA6 1896) (Taft, J.).  Though today the District of Columbia has a measure of home rule, the United States retains important interests in the District of Columbia, ranging from extensive federal property to the welfare of hundreds of thousands of federal employees.  That the statute involved in this case is narrow in scope should not be permitted to camouflage the Nation's vital interest in the validity of laws governing its Capital.[7]

I can see no reason for denying mandatory jurisdiction of constitutional challenges to D. C. Code provisions other than the general need to lessen the number of cases heard by this Court.  While this may be a worthy objective, it should be effectuated by statutory amendment, not strained construction.  Jurisdiction is not a handy tool for carving a workload of acceptable size and shape, but a solemn obligation imposed by the Congress and enforceable by every deserving litigant.  Because I believe that the Court here shirks that duty, I dissent from the opinion of the Court.

---

[7] The majority opinion argues that no appeal is needed in the circumstances of this case because the "uniformity of national law is not threatened" when a local court invalidates a federal law "of exclusively local application."  See *ante*, at 67, 68.  But there are a great number of federal laws which, though applicable only to a limited area, deal with a vital national interest.  *E. g.*, Point Reyes National Seashore Act of 1976, 90 Stat. 2515 (designating as wilderness 33,000 acres of land in California).  Just as an appeal is allowed to protect these statutes against constitutional attack, an appeal should be allowed for federal legislation dealing with the Nation's Capital.