**UNITED STATES of America**

v.

**James T. COGDELL, a/k/a James T. Cogwell, Appellant.**

No. 77-1602.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 5, 1977.

Decided July 12, 1978.

As Amended July 12, 1978.

Rehearing Denied Oct. 19, 1978.

Dorothy Sellers, Washington, D. C. (appointed by this court), for appellant.

David G. Hetzel, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Steven R. Schaars, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. James F. Hibey and William D. Pease, Asst. U. S. Attys., Washington, D. C., also entered appearances for appellee.

Before WRIGHT, Chief Judge, and McGOWAN and WILKEY, Circuit Judges.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

Dissenting opinion filed by Circuit Judge WILKEY.

J. SKELLY WRIGHT, Chief Judge.

Appellant James Cogdell was convicted by a jury of violating 18 U.S.C. § 751(a) (1976) by escaping from the

"Northeast One" section of the new D.C. Jail on August 26, 1976, the same date as the escape of the appellants in *United States v. Bailey*, 190 U.S.App.D.C. ——, 585 F.2d 1087 (D.C. Cir. 1978), a case we also decide today. Cogdell was originally indicted along with those other appellants, but his case was severed and tried at a later date to accommodate his attorney's schedule. Nevertheless, the trial judge relied heavily on the rulings he had made previously in the *Bailey* case when ruling on appellant's motions and developing the jury instructions.[1] For the reasons outlined in *Bailey* we hold that Cogdell's conviction must be reversed and his case remanded for a new trial because of errors in the trial court's instructions and the exclusion of relevant evidence on the "escape" element of the offense.[2]

■■■ Cogdell's case also raises unique issues that require additional consideration. Unlike any of the appellants in *Bailey*, Cogdell had been brought to the D.C. Jail pursuant to a writ of *habeas corpus ad prosequendum* from the Fairfax County Jail in Virginia where he had been committed following a state conviction but before sentencing.[3] Cogdell's indictment reflected his special situation; he was charged with escaping from "custody under and by virtue of a commitment issued under the laws of the United States by a Judge of the Superior Court of the District of Columbia following his arrest on a charge of a felony."[4]

1. See Transcript of Proceedings, *United States v. Cogdell*, Criminal No. 76–735–3 (D.D.C. May 9, 1977) (hereinafter *Cogdell* Tr. I), at 65–78. *Compare* Transcript of Proceedings, *United States v. Cogdell*, Criminal No. 76–735–3 (D.D.C. May 10, 1977) (hereinafter *Cogdell* Tr. II), at 103–116 (jury instructions) *with* Transcript of Proceedings, *United States v. Bailey*, Criminal No. 76–735–4 (D.D.C. March 14, 1977) (hereinafter *Bailey* Tr.), at 790–807 (jury instructions). *See also* text and notes at notes 10–12 *infra*.

2. See *United States v. Bailey*, 190 U.S.App.D.C. ——, ——, 585 F.2d 1087 (D.C. Cir. 1978). Cogdell adopted the arguments of appellants Walker and Bailey on this issue. *See* brief for appellant at v. Relying on his ultimate conclusion in *Bailey* to exclude from the jury's consideration any evidence of threats, assaults, or conditions in the D.C. Jail, the trial judge refused even to admit such evidence in Cogdell's case. *See Cogdell* Tr. I, *supra* note 1, at 11–12. The trial court's instructions on intent and on what constitutes an "escape" were the same in both cases. *Compare Cogdell* Tr. II, *supra* note 1, at 110–111, 113, *with Bailey* Tr., *supra* note 1, at 799–801, 802.

3. A court issues a writ of *habeas corpus ad prosequendum* when it is necessary to bring a person who is confined for some other offense before the issuing court for trial. *See generally Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961); *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807). Appellant had been convicted in the Circuit Court of Fairfax County on July 21, 1976, of three counts of uttering and delivering a forged check. His sentencing on that conviction had been postponed until September 9, at his attorney's request, so that a presentence report could be prepared. At the time the writ involved in this case was issued, appellant was confined in the Fairfax County Jail awaiting sentence.

4. See *Cogdell* Tr. II, *supra* note 1, at 112. Appellant was also charged with violating 22 D.C. Code § 2601 (1973) (prison breach), but the jury was instructed that they need not consider this charge if they found appellant guilty of the federal offense. *See Cogdell* Tr. II, *supra* note 1, at 113.

18 U.S.C. § 751(a) (1970) provides:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, *or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate*, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, *if the custody or confinement is by virtue of an arrest on a charge of felony*, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

(Emphasis added.) Cogdell's indictment was based on the portion of § 751 proscribing escapes "from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate," in contrast to the indictments in *Bailey*, which were based on escape from the "custody of the Attorney General." *See United States v. Bailey, supra* note 2, 190 U.S.App.D.C. at ——, 585

On the basis of these factors peculiar to his case, Cogdell argues that the charge on which he was convicted must be dismissed. We find no error that requires dismissal and therefore remand this case, like those of the appellants in *Bailey*, for further proceedings.

## I

■ Appellant first contends that the indictment does not state an offense under 18 U.S.C. § 751(a) (1976) because the writ of *habeas corpus ad prosequendum* issued by the Superior Court was not issued under the laws of the United States. Cogdell claims that the writ was issued under 16 D.C.Code § 1901 (1973), which he argues is not a law of the United States. *See Key v. Doyle*, 434 U.S. 59, 98 S.Ct. 280, 54 L.Ed.2d 238 (1977). The Government does not contend that Section 1901 is a law of the United States, but responds that the writ in this case was issued under the All Writs Act, 28 U.S.C. § 1652 (1970), which is a law of the United States. The writ does not recite the statutory authority under which it was issued,[5] but we find the Government's position more convincing than appellant's.

Section 1901 is limited by its terms to writs of *habeas corpus ad subjiciendum* —writs challenging the grounds for imprisonment of persons "committed, detained, confined, or restrained from [their] lawful liberty within the District."[6] The authority to issue writs of *habeas corpus ad prosequendum* cannot be read into the language of the section without severe strain. On the other hand, the literal terms of Section 1652 authorize the Superior Court, as a court "established by Act of Congress," to issue the writ of *habeas corpus ad prosequendum* as one "in aid of [its] respective jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (1970). *See Morrow v. District of Columbia*, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969).[7]

F.2d at 1087. Appellant urges us to find the indictment fatally defective because it uses the term "commitment" rather than "process," and because a writ of *habeas corpus ad prosequendum* is not a commitment. Brief for appellant at 8–12. We agree with the Government, however, that the word "commitment" has a general custodial sense as well as a strict technical one, and that the words of the indictment were sufficiently clear to give appellant notice of the proof that would be adduced against him and to protect him from double jeopardy. *See Gaither v. United States*, 134 U.S.App.D.C. 154, 159, 413 F.2d 1061, 1066 (1969).

5. Government Exhibit 1C. The writ does begin with the following salutation:

THE PRESIDENT OF THE UNITED STATES:
TO: Superintendent, Fairfax County Jail
  United States Marshal for the District of Columbia
  United States Marshal for the Eastern District of Virginia
GREETINGS:

     \*    \*    \*    \*    \*    \*

6. § 16–1901. Petition; issuance of writ

(a) A person committed, detained, confined, or restrained from his lawful liberty within the District, under any color or pretense whatever, or a person in his behalf, may apply by petition to the appropriate court, or a judge thereof, for a writ of habeas corpus, to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into. The court or the judge applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant the writ, directed to the officer or other person in whose custody or keeping the party so detained is returnable forthwith before the court or judge.

(b) Petitions for writs directed to Federal officers and employees shall be filed in the United States District Court for the District of Columbia.

(c) Petitions for writs directed to any other person shall be filed in the Superior Court of the District of Columbia.

7. The All Writs Act was made expressly applicable to courts "established by Act of Congress" in a 1948 revision. The Revisor's Note commented:

The revised section extends the power to issue writs in aid of jurisdiction, to all courts established by Act of Congress, thus making explicit the right to exercise powers implied from the creation of such courts.

28 U.S.C. § 1651 (1970) (Reviser's Note). The power to issue writs of *habeas corpus ad prosequendum* seems clearly within this category of implied powers.

Appellant argues that despite its literal language the All Writs Act does not grant any authority to issue writs of *habeas corpus*. He relies on the Supreme Court's analysis of *habeas corpus* and the All Writs Act in *Carbo v. United States, supra* note 3. The Court in *Carbo* was concerned with the jurisdiction of a federal district court to issue a writ of *habeas*

■ Although Congress has recently passed legislation designed to treat the D.C. court system more like the court system of a state,[8] it surely did not intend to remove the local courts' power to issue writs of *habeas corpus ad prosequendum.* Since Congress has not provided for this authority in a "local" statute, we conclude that the Government was justified in claiming that the authority still exists under the All Writs Act and that the writ issued in this case was therefore issued under the laws of the United States.[9]

## II

■ Appellant also argues that the indictment must be dismissed because of a fatal variance between the offense with which he was charged and that for which he was tried. We see no consequential variance between the indictment and the evidence. As noted above, appellant was indicted for escaping from "custody under and by virtue of a committment [*sic*] issued under the laws of the United States by a Judge of the Superior Court of the District of Columbia following his arrest on a

charge of a felony." The prosecution's documentary and testimonial evidence indicated that appellant had been brought from the Fairfax County Jail on August 17, 1976 pursuant to a writ of *habeas corpus ad prosequendum* to appear for a status call in the Superior Court, where he had been indicted on charges of forgery, uttering, unauthorized use of a vehicle, and carrying a pistol without a license; that he had been confined in the "Northeast One" section of the new D.C. Jail; that he had left the jail without authorization on August 26; and that he had been arrested by the FBI on September 28.[10]

While we see no significant variance between the indictment and the evidence, we do recognize that there were possibly prejudicial variations between the indictment and the trial court's instructions. Because of the similarity between appellant's case and *United States v. Bailey,* the trial judge developed the instructions for this case by going through the instructions he had given in the *Bailey* case and making the changes he thought necessary in consultation with

corpus ad prosequendum to retrieve a prisoner outside its territorial jurisdiction and found the issue controlled by 28 U.S.C. § 2241, the specific provision giving the Supreme Court, Supreme Court Justices, circuit judges, and federal district courts the power to issue writs of *habeas corpus,* rather than by the All Writs Act. *See id.* at 621, 624 (Warren, C. J., dissenting). Unlike the All Writs Act, § 2241 does not mention courts established by Act of Congress. Although *Carbo* holds that § 2241 governs issuance of writs of *habeas corpus* by the courts and judges mentioned in that section, appellant's contention that § 2241 implicitly denies any other court or judge authority to issue the writ under the All Writs Act is contrary to other Supreme Court precedents and to the views of leading commentators. *See, e. g., United States v. Hayman,* 342 U.S. 205, 221 & n.35, 72 S.Ct. 263, 96 L.Ed. 232 (1952); *Price v. Johnston,* 334 U.S. 266, 278–286, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); 9 J. Moore, Federal Practice ¶¶ 110.26–110.28 (2d ed. 1975).

8. *See* District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No. 91–358, 84 Stat. 473; *Palmore v. United States,* 411 U.S. 389, 409, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *Key v. Doyle,* 434 U.S. 59, 98 S.Ct. 280, 54 L.Ed.2d 238 (1977).

9. Appellant also contends that his custody pursuant to the writ ended as a matter of law when the status call for which he had been brought to the Superior Court was over. *See United States v. Stead,* 528 F.2d 257 (8th Cir. 1975), *cert. denied,* 425 U.S. 953, 96 S.Ct. 1730, 48 L.Ed.2d 197 (1976). In our opinion this argument reflects an overly restrictive view of what constitutes "custody" for purposes of the federal escape statute. *See United States v. Bailey, supra* note 2, 190 U.S.App.D.C. at ——, 585 F.2d at 1087. The delay of eight days in returning Cogdell to Virginia, although not satisfactorily explained in the record, was not inordinate, and an instruction that a prisoner remains in "custody" for purposes of § 751 by virtue of a writ of *habeas corpus ad prosequendum* until he has been returned to the sending jurisdiction as provided in the writ would not be improper in this case.

10. *See* Government Exhibits 1A (face sheet), 1B (escape apprehension report), 1C (Writ of Habeas Corpus Ad Prosequendum), and 1D (Petition for Writ of Habeas Corpus Ad Prosequendum); *Cogdell* Tr. I, *supra* note 1, at 22–29 (testimony of James Harbin, Supervisor of the Records Office at the new D.C. Jail); 54–57 (testimony of FBI Agent Barry Colvert).

the prosecutor and defense counsel.[11] The instructions resulting from this procedure failed to take sufficient account of the differences between the indictment in *Bailey* and that in this case. In particular, much language referring to the "custody of the Attorney General" was left in the instructions, in spite of the irrelevance of such language to the charge in Cogdell's indictment.[12] In its context, this superfluous language may not have been prejudicial to appellant,[13] and appellant's counsel did not object to the instructions on this ground at trial. Nevertheless, this language was a potential source of confusion to the jury, and we assume that the trial court will not give the same instruction in the new trial.

## III

Appellant's final argument is based on the Interstate Agreement on Detainers (IAD), to which the District of Columbia and the United States became signatories in 1970. 24 D.C.Code § 701 (1973); Pub.L. 91–538, 84 Stat. 1397 (1970). The IAD is designed to establish a uniform process for transporting prisoners for trial from a jurisdiction in which they are serving a sentence to a jurisdiction in which they have been charged with an offense. The primary purpose of the IAD is to eliminate the abuses, such as delay in bringing prisoners to trial and interference with rehabilitation programs, which characterized the use of "detainers" previous to the adoption of the

11. *Cogdell* Tr. I, *supra* note 1, at 65–78. *See* note 1 *supra*.

12. *See* text and note at note 4 *supra*.

13. The relevant portion of the trial's instructions reads:

I will now take up with you the indictment and the instructions which relate particularly to the indictment. You are instructed as a matter of law that an individual held within the District of Columbia, Department of Corrections, pursuant to a court order of commitment or Writ of Habeas Corpus [Ad] Prosequendam [*sic*] of the Superior Court of the District of Columbia is in the custody of the Attorney General of the United States.

Now, ladies and gentlemen, Mr. Cogdell, the Defendant in this case, is charged in Count One of the indictment as follows: On or about August 26, 1976, within the District of Columbia, James T. Cogdell, having been in the custody under and by virtue of a commitment issued under the laws of the United States by a Judge of the Superior Court of the District of Columbia following his arrest on a charge of a felony, did unlawfully and willfully flee and escape from such custody, which would constitute a violation of Title 18 of the United States Code, Section 751(a). Now, the essential elements of the offense of escape from custody, each of which the Government must prove beyond a reasonable doubt in order to justify a verdict of guilty[,] are as follows:

First, that at the time [of] the offense, that is to say August 26, 1976, the Defendant in question had been in custody pursuant to a commitment issued under the laws of the United States. On that particular date there are certain copies of pertinent court papers on that particular element.

Second, that as a result of the commitment, the Defendant was committed to the custody of the Attorney General or his designated representative, and was in custody at the time of the offense. Insofar as this element is concerned, there are records of the District of Columbia, Department of Corrections, and a certified copy of the Writ of Habeas Corpus ad Prosequendam [*sic*]. That is to say, these records have been received in evidence. You may examine them in the jury room. You have previously been instructed as to the legal significance of the commitment, the Writs of Habeas Corpus as they pertain to the custody of the Attorney General or his authorized representative.

\*     \*     \*     \*     \*     \*

\* \* \* Thus, if you find that the Government has proven beyond a reasonable doubt each of the essential elements constituting the offense charged in Count One, you may find the Defendant guilty as charged.

On the other hand, if you have a reasonable doubt as to whether the Government has proved any one of these essential elements, then you must find the Defendant not guilty. *Cogdell* Tr. II, *supra* note 1, at 111–113. These instructions indicate that the trial court added an additional element (being in the custody of the Attorney General) to the elements of the offense alleged in the indictment (escaping from custody by virtue of a commitment issued under the laws of the United States), and then instructed the jury that this additional element was met as a matter of law if the other elements were satisfied. We also note in passing for the benefit of the trial court on remand that the instructions might have given more emphasis to the requirement that the defendant must be in custody "by virtue of an arrest on a charge of felony," an element contained in both the statute and the indictment.

Agreement.[14] The provisions of the IAD relevant to this case allow "[t]he appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending * * * to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available * * * upon presentation of a written request for temporary custody * * *." Article IV(a). The IAD also provides that once a prisoner has been transferred pursuant to its provisions, "[i]f trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment * * *, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." Article IV(e).

Appellant urges us to treat a writ of *habeas corpus ad prosequendum* issued by the Superior Court as a "detainer" and to find that the provisions of the IAD apply to his case. He points out that before the writ involved in this case was issued he had already been brought before the Superior Court for arraignment and returned to the Fairfax County Jail. If the IAD applies, he argues (1) that his return to Virginia prior to trial rendered the charges against him in the Superior Court of no effect, (2) that the writ bringing him before the Superior Court on August 17 was therefore a "nullity," and (3) that the writ thus cannot serve as a basis for a conviction of escape under 18 U.S.C. § 751(a).

■ Appellant's arguments based on the IAD are no longer tenable following the Supreme Court's recent decision in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). The Court in *Mauro* held that a writ of *habeas corpus ad prosequendum* issued pursuant to 28 U.S.C. § 2241 is not a "detainer" under the IAD. Although we hold that the writ in this case was issued under the All Writs Act, 28 U.S.C. § 1651, the Court's reasoning—that the IAD was not intended to apply to writs of *habeas corpus ad prosequendum* because such writs do not cause the problems created by detainers, which the IAD was meant to relieve, *United States v. Mauro, supra,* 436 U.S. at 340, 98 S.Ct. 1834—applies with equal force regardless of the authority under which the writ is issued.

## IV

Since we conclude that none of the arguments raised by appellant require dismissal of the charge on which he was convicted, we reverse the judgment of the District Court for the reasons stated above and remand this case for further proceedings.

*Reversed and remanded.*

WILKEY, Circuit Judge, dissenting:

I respectfully dissent for the reasons set forth in my dissenting opinion in the companion case, *United States v. Bailey et al.,* 190 U.S.App.D.C. ——, 585 F.2d 1087 (D.C. Cir. 1978).

**14.** *See generally* Note, *The Effect of the Interstate Agreement on Detainers Upon Federal Prisoner Transfer,* 46 Fordham L.Rev. 492, 508–515 (1977); Comment, *The Detainer System and the Right to a Speedy Trial,* 31 U.Chi. L.Rev. 535 (1964); Note, *Guaranty of a Speedy Trial for Convicts in Other Jurisdictions,* 77 Yale L.J. 767 (1968).