Helene V. RUBIN, Plaintiff,

v.

ESTATE OF Timothy J. WARNER, and Lisa J. Rubin, Defendants.

Civ. A. No. 93–1792.

United States District Court, District of Columbia.

March 21, 1995.

David Titus Dekker, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Helene Victoria Rubin.

David Dart Queen, John F. Morkan, III, Elizabeth E. Frasher, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Estate of Timothy John Warner, c/o Jack R. Warner.

Harry Levy, Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, MD, for Lisa Joyce Rubin.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter comes before the Court on Defendant/Third Party plaintiff's (estate of Timothy Warner), motion for summary judgment on its third party claim against Lisa Rubin. For the reasons stated below, the motion is granted.

*Background*

This case has a long and tragic history. In order to understand the third party claim, some factual background is necessary. In late April, 1990 Lisa Rubin was charged with the murder of Tim Warner, her estranged husband. In November 1990, she was convicted in the Circuit Court for Montgomery County, Maryland of a number of charges, including first degree murder. In April, 1991, the estate filed a survivor action against Lisa Rubin. The parties settled the case before trial. As part of the settlement, Lisa Rubin agreed to transfer an interest in property at 5030 Linnean Avenue, N.W. Washington, DC, which she claimed to hold as a joint tenant with her mother, Helene Rubin. In the agreement, Lisa Rubin expressly warranted that she had good and marketable title to her interest in the property. Lisa Rubin has admitted in discovery that her mother, Helene had demanded return of Lisa's interest in the property prior to Lisa's execution of the settlement agreement in the wrongful death suit.

Following the execution of this agreement, Helene Rubin filed a complaint against the estate, and its representative in this Court. In her complaint, Helene Rubin alleged that Tim Warner and Lisa Rubin had fraudulently induced her to transfer the joint interest in the property to Lisa Rubin. In her prayer for relief, she requested *inter alia* that the transfer between Lisa Rubin and the estate and the original transfer to Lisa Rubin be declared null and void.

Third party plaintiff argues that Lisa Rubin knew, at the time that she warranted that she had good and marketable title to the property interest she was transferring, that her mother Helene intended to challenge that interest. Therefore, plaintiff has moved for summary judgment on its claims for breach of warranty of good and marketable title and for reimbursement for its fees and costs in defending its suit against Helene Rubin.

*Analysis*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mere allegations or denials of the adverse party's pleadings are not enough to prevent issuance of summary judgment. The adverse party's response to the summary judgment motion must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Pro. 56(e).

The Supreme Court set forth the governing standards for issuance of summary judgment in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in which the Supreme Court recognized the need for summary judgment to the fair and efficient functioning of the justice system:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1 . . . .

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555. (citation omitted).

The non-moving party, is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987) *(per curiam )* (citing *Celotex, supra* ). The moving party is entitled to summary judgment where "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex* 477 U.S. at 323, 106 S.Ct. at 2552. Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence. *See* Local Rule 108(h).

In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202. The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993).

*Defendant's "Unclean Hands" Defense*

The doctrine of unclean hands is designed to preserve the integrity of the Court by protecting it from exercising its powers to aid those who are before the Court as a result of their own fraudulent behavior. *See Space Aero Products v. R.E. Darling Co.,* 238 Md. 93, 208 A.2d 74, 88 (1965). Defendant argues that summary judgment is inappropriate because there are factual issues in dispute as to whether Tim Warner fraudulently induced Helene Rubin to transfer an interest in her property to Lisa Rubin in 1984. Defendant asserts that if Tim Warner was liable for fraudulent inducement, then Lisa Rubin would have a valid defense of "unclean hands" against the third party complaint because any defenses that would have

been valid against the decedent would be valid against the estate.

 Defendant's argument mischaracterizes the scope of an "unclean hands" defense. The unclean hands doctrine applies if "the alleged misconduct [is] connected with the transaction upon which the plaintiff seeks relief." *Adams v. Manown,* 328 Md. 463, 615 A.2d 611, 617 (1992). Here, the matter in which relief is sought is the estate's claim against Lisa Rubin for giving a warranty on land she transferred to the estate in the 1993 settlement of the estate's wrongful death action against her. It is undisputed that the estate negotiated in good faith and does not have unclean hands in that transaction.

Defendant, however, asserts that she has a valid unclean hands defense against the estate because she can raise any defenses against the estate that she would have had against the decedent. Defendant is correct that generally defenses that "would have been valid against the decedent, had the decedent survived, are good against the decedent's" estate. *See, e.g., Smith v. Gross,* 319 Md. 138, 571 A.2d 1219, 1221 (1990). But this principle provides no relief for the defendant on the facts of this case. Because the matter in which relief is being sought, the negotiations between Lisa Rubin and Tim Warner's estate, never involved Tim Warner, Lisa Rubin could not have raised an unclean hands against him. Consequently, no such defense exists against the estate.

An illustration of a valid use of an unclean hands defense should serve to show why such a defense is not applicable here. If one person were secretly to transfer property to another in order illegally to avoid tax liability, the recipient might well have an unclean hands defense if the transferor were later to sue the recipient for recovery of the property. If the transferor were to die, the court would have the discretion to apply the doctrine to bar relief on any claim brought by the transferor's estate against the recipient for return of the property.

In this case, the estate negotiated in good faith for property in settlement of a wrongful death suit. The fact that nine years earlier the decedent might have fraudulently helped Lisa Rubin obtain that property does not create an unclean hands defense against the estate, which was an innocent party to the 1993 negotiations. Any "dirt" on Tim Warner's hands from 1984 is not transferred to his estate to protect Lisa Rubin from liability for breaching the warranty of marketable title that she made to the estate in 1993. *See* D. Dobbs, *Remedies,* § 2.4, at 46 (1973) (" 'What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts.' ") (citations omitted).

Defendant is correct that there are factual questions as to whether Tim Warner and/or Lisa Rubin fraudulently induced Helene Rubin to transfer an interest in her property to Lisa in 1984. Resolution of those issues may reveal that Tim Warner did have unclean hands as to the 1984 transfer. But these disputes are not material to the question of whether Lisa Rubin breached her express warranty of marketable title to the estate of Tim Warner.

For the foregoing reasons, summary judgment on defendant's third party claim is granted *solely* on the question of liability.