**UNITED STATES of America,**
**Plaintiff,**

v.

**DISTRICT OF COLUMBIA,**
**et al., Defendants.**

**No. Civ.A. 95–601(RMU).**

United States District Court,
District of Columbia.

March 31, 1999.

Valinda Jones, John Michael Facciola, William Mark Nebeker, Timothy S. Susanin, U.S. Attorney's Office, Washington, DC, for United States of America, plaintiff.

Janet L. Maher, Sharlene E. Williams, Michelle E. Connor, Office of the Corporation Counsel, Mental Health Division, Washington, DC, for District of Columbia, defendant.

David Loris Norman, D.C. Public Defender's Service, Washington, DC, William James Mertens, Swidler, Berlin, Shereff & Friedman, L.L.P., Washington, DC, for William Bennett, defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

**Granting the Plaintiff's Motion for Summary Judgment; Denying the Defendants' Motions for Summary Judgment**

The above captioned case arises out of two cases now consolidated into one. The

first case, Civil Action No. 95–601, was originally filed by the United States of America against the District of Columbia and William Bennett, a representative patient at Saint Elizabeths Hospital in Washington, D.C. The second case, Civil Action No. 96–2551, was originally filed by a group of patients at Saint Elizabeths Hospital, including Mr. Bennett, against Janet Reno in her official capacity as Attorney General of the United States and Zanni Guido in his official capacity as Commissioner on Mental Health Services for the District of Columbia. In the consolidated case, Civil Action No. 95–601, the plaintiff is the United States of America and the defendants are the District of Columbia and the group of patients at Saint Elizabeths Hospital. The consolidated case is currently before the court on all parties' motions for summary judgment. For the reasons stated herein, the court will grant the plaintiff's motion for summary judgment and deny the defendants' motions for summary judgment.

## I. BACKGROUND

This action commenced on March 29, 1995, when the United States of America (hereinafter "plaintiff") filed a complaint against the District of Columbia and Mr. Bennett seeking release of the psychiatric records of a group of patients who had been committed to Saint Elizabeths Hospital (hereinafter "St. Elizabeths") pursuant to D.C.Code Ann. § 24–301(d)(1) after having been found not guilty of federal crimes by reason of insanity. In the original complaint, the plaintiff alleged that it was entitled to access the patients' psychiatric records pursuant to 24 U.S.C. § 225f, which provided for the transfer to the District of Columbia of "all right, title, and interest of the United States in all real property at Saint Elizabeths Hospital. . . ." 24 U.S.C. § 225f(a)(1). During the pendency of this litigation, however, Congress amended 18 U.S.C. § 4243 to include a provision that specifically grants the plaintiff access to the records sought. *See* Title III of the Economic Espionage Act of 1996, Pub.L.

No. 104–294, § 301, 110 Stat. 3488, 3494–95 (Oct. 11, 1996) (hereinafter "Title III"). Consequently, the plaintiff now relies primarily on Title III to support its allegation of entitlement to the patients' psychiatric records.

Both the District of Columbia and the patients whose records are being sought (hereinafter collectively referred to as "defendants") contend that the plaintiff is not legally entitled to the records. Consequently, on November 8, 1996, the patients filed a complaint seeking a declaration that the provision of Title III that grants the plaintiff access to their records (hereinafter "access provision") is unconstitutional and seeking an injunction barring St. Elizabeths from releasing their records. The patients also seek a declaration that a separate provision of Title III, which provides for the transfer of the patients themselves into the custody of the Attorney General, (hereinafter "transfer provision") is unconstitutional. In addition, they seek an injunction barring the plaintiff from attempting to obtain custody of the patients.

On November 20, 1996, the court granted the patients' motion for a temporary restraining order, thus barring the plaintiff from either accessing the records or attempting to obtain custody of the patients. Subsequently, the court consolidated the plaintiff's original complaint and the complaint later filed by the patients into the action currently before the court.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

All parties to this action have filed motions for summary judgment. Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law upon which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a

fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes over facts that can establish an element of the claim, and thus might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the nonmoving party as true and must draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the nonmoving party to establish "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position ...; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted).

In this case, the court concludes that there are no genuine issues of material fact and that the plaintiff is entitled to judgment as a matter of law. Accordingly, the plaintiff's motion for summary judgment will be granted and the defendants' motions for summary judgment will be denied.

## III. DISCUSSION

### A. Legislative History

The Insanity Defense Reform Act, 18 U.S.C. § 4243, which Congress enacted in 1984, provides for the mandatory hospitalization of defendants found not guilty of federal crimes by reason of insanity. Even prior to the enactment of 18 U.S.C. § 4243, however, defendants charged with federal crimes in the District of Columbia who were found not guilty by reason of insanity were automatically committed to a hospital for the mentally ill. These defendants were committed to St. Elizabeths pursuant to D.C.Code Ann. § 24–301(d)(1), which provides as follows:

> If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release....

It was pursuant to D.C.Code Ann. § 24–301(d)(1) that all of the patients who are parties to this action were committed to St. Elizabeths.

From 1855 until 1987, St. Elizabeths was owned and operated by the United States government. *See* 24 U.S.C. §§ 225, 225f. On October 1, 1987, however, Congress transferred ownership and control of St. Elizabeths to the District of Columbia. *See* 24 U.S.C. § 225f. Nevertheless, the United States remained financially responsible for all patients committed to St. Elizabeths as a result of having been found not guilty of federal crimes by reason of insanity. *See* 24 U.S.C. § 225g(b)(1)(C) (directing the United States to pay "the full costs for the provision of mental health diagnostic and treatment services for ... any individual referred to the system as a result of a criminal proceeding in a Federal court").

Nothing in 24 U.S.C. §§ 225–225h expressly entitles the United States to access to the psychiatric records of the patients for whom it is financially responsible. Title III, however, does just that. In relevant part, the access provision of Title III states:

[T]he District of Columbia and St. Elizabeths Hospital—

(1) not later than 30 days after the date of enactment of this Act, shall provide to the Attorney General copies of all records in the custody or control of the District or the Hospital on such date of enactment pertaining to persons described in section 4243(i) of title 18, United States Code (as added by subsection (a));

(2) not later than 30 days after the creation of any records by employees, agents, or contractors of the District of Columbia or of St. Elizabeth's Hospital pertaining to persons described in section 4243(i) of title 18, United States Code, provide to the Attorney General copies of all such records created after the date of enactment of this Act. . . .

See Pub.L. No. 104–294, § 301, 110 Stat. at 3495. "Persons described in section 4243(i) of title 18, United States Code (as added by subsection (a))" includes "all persons who have been committed to a hospital for the mentally ill pursuant to section 301(d)(1) of title 24 of the District of Columbia Code, and for whom the United States has continuing financial responsibility." See Pub.L. No. 104–294, § 301, 110 Stat. at 3494. Accordingly, Title III expressly mandates the release of the defendant patients' records to the plaintiff.

Title III does not stop there, however. In addition to providing for access to the patients' records, Title III also provides for the transfer of the patients themselves into the custody of the Attorney General. In relevant part, the transfer provision of Title III states:

[A]ll persons who have been committed to a hospital for the mentally ill pursuant to section 301(d)(1) of title 24 of the District of Columbia Code, and for whom the United States has continuing financial responsibility, may be transferred to the custody of the Attorney General, who shall hospitalize the person for treatment in a suitable facility.

See Pub.L. No. 104–294, § 301, 110 Stat. at 3494. This court begins its analysis of the claims presently before it in the wake of Title III and its clearly expressed intent to entitle the United States to access the patients' records and to transfer the patients into its custody.

### B. Justiciability

With respect to the constitutionality of Title III's transfer provision, the plaintiff argues that the issue is not ripe for adjudication. Having reviewed the parties' submissions, the relevant law and the record herein, the court agrees with the plaintiff that the issue regarding the constitutionality of Title III's transfer provision is not yet ripe for review and, thus, is not properly before the court at this time.

To determine whether or not an issue is ripe for adjudication, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 1260, 140 L.Ed.2d 406 (1998) (quoting *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)) (internal quotations omitted). With respect to the "fitness for judicial decision" prong, the Supreme Court has said that "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas,* 118 S.Ct. at 1259 (quoting *Thomas v. Union Carbide Agric. Products Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Similarly, with respect to the "hardship to the parties" prong, the Supreme Court has said that an abstract harm is not sufficient; there must be an *immediate* harm with a "direct effect on the day-to-day business of the plaintiffs." *Texas,* 118 S.Ct. at 1260 (quoting *Abbott,* 387 U.S. at 152, 87 S.Ct. 1507) (internal citations omitted).

█ Examining the allegations in the instant case through the lens of *Texas v. United States,* the court concludes that the

future events contemplated by the defendants are too speculative and the hardship is too abstract to warrant judicial consideration of the defendants' constitutional challenge to Title III's transfer provision. On its face, the transfer provision of Title III does nothing more than authorize the Attorney General to establish custody over the defendant patients. It does not, however, mandate that the Attorney General take such action. Moreover, even if the Attorney General were to exercise her authority under Title III to establish custody over the defendants, Title III does not mandate a physical transfer of the patients from St. Elizabeths to some other facility. Title III merely states that the Attorney General, upon taking custody of any patient, "shall hospitalize the person for treatment in a suitable facility." This could mean keeping the patient at St. Elizabeths or moving the patient elsewhere, but nothing in Title III suggests that any one outcome is more likely than another. Under these circumstances, where the court has no idea whether one or any of several possibilities will occur, the potential harm from one anticipated possibility is not immediate and the issue is not fit for adjudication. *See Texas*, 118 S.Ct. at 1260 ("Under these circumstances, where we have no idea whether or when such a sanction will be ordered, the issue is not fit for adjudication." (quoting *Toilet Goods Assn., Inc. v. Gardner*, 387 U.S. 158, 163, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967)) (internal quotations omitted)). Accordingly, the court concludes that the defendants' constitutional challenge to Title III's transfer provision is not ripe for review and, therefore, not justiciable at this time.

### C. Unclean Hands

Having determined that the issue regarding the constitutionality of Title III's transfer provision is not properly before it, the court will limit the remainder of its analysis to the issue of whether or not the United States is entitled to access the defendant patients' psychiatric records. At the outset of this analysis, the court will address the defendants' argument that the United States may not seek declaratory relief because it has "unclean hands."

■ "The doctrine of 'unclean hands' is designed to preserve the integrity of the Court by protecting it from exercising its powers to aid those who are before the Court as a result of their own fraudulent behavior." *Rubin v. Warner*, 881 F.Supp. 23, 25 (D.D.C.1995). The defendants offer three arguments in support of their assertion that the plaintiff has unclean hands. First, they argue that the plaintiff has disregarded its duty under 24 U.S.C. § 225g(b)(1)(C) to pay for the care and treatment of the defendant patients. (Mem. of Points and Auth. in Supp. of D.C.'s Mot. for Summ.J. at 9.) Second, they argue that the plaintiff has misrepresented facts to this court by incorrectly stating that it pays "millions of dollars each year" for the care and treatment of the defendant patients. (Mem. of Points and Auth. in Supp. of D.C.'s Mot. for Summ.J. at 9.) Finally, they argue that the plaintiff is "request[ing] confidential records under the pretense of administrative need when in fact, the United States wants to assert a punitive, prosecutorial role with regard to the [defendant patients]." (Mem. of Points and Auth. in Supp. of D.C.'s Mot. for Summ.J. at 10.)

■ With respect to the defendants' second and third arguments, the court concludes that there is not sufficient evidence in the record to support the defendants' allegations or to warrant application of the unclean hands doctrine. With respect to the defendants' first argument, the court also concludes that application of the unclean hands doctrine would be inappropriate. The unclean hands doctrine is appropriately applied when "the alleged misconduct is connected with the transaction upon which the plaintiff seeks relief." *Rubin*, 881 F.Supp. at 26 (quoting *Adams v. Manown*, 328 Md. 463, 615 A.2d 611, 617 (1992)) (internal quotations omitted). In the instant case, the court concludes

that the alleged uncleanliness proffered by the defendants is not sufficiently connected with the transaction upon which the plaintiff seeks relief. This is especially so given that the alleged uncleanliness is itself the subject of separate litigation filed by the defendants. (*See* Mem. of Points and Auth. in Supp. of D.C.'s Mot. for Summ.J. at 8 (referencing United States Court of Federal Claims No. 93–601C).) Accordingly, the court will not invoke the unclean hands doctrine to preclude the plaintiff from seeking declaratory relief in this case.

### D. Preemption

Turning now to the merits of the issue of whether the United States is entitled to access the psychiatric records of the defendant patients, the court will first address the question of preemption. The defendants argue that Title III does not preempt District of Columbia laws prohibiting access to the patients' records because Title III is, in essence, a local law, not a federal law. The defendants base this argument on the fact that Title III applies exclusively to the District of Columbia and has no effect on any other state. Despite the limited repercussions of Title III, however, the court concludes that Title III is indeed a federal law and that it preempts District of Columbia law.

### 1. Federal Versus State Law

In *Brown v. United States,* 742 F.2d 1498 (D.C.Cir.1984), the United States Court of Appeals for the District of Columbia Circuit recognized that

> [u]nder the Constitution, Congress has authority to act as the local legislature for the District of Columbia, and thus Congress frequently enacts legislation applicable only to the District and tailored to meet local needs. Absent evidence of contrary congressional intent, such enactments should be treated as local law, interacting with federal law as would the laws of the several states.

*Id.* at 1502. The defendants cite this and other similar cases in support of their proposition that Title III constitutes a local, not federal, law. These cases, however, represent instances in which Congress, by its authority to act as the local legislature for the District of Columbia, enacted provisions of law within the D.C.Code, not the United States Code. *See, e.g., Brown,* 742 F.2d at 1501 (discussing federal applicability of D.C.Code Ann. § 12–309); *Key v. Doyle,* 434 U.S. 59, 61, 98 S.Ct. 280, 54 L.Ed.2d 238 (1977) (discussing whether D.C.Code Ann. § 18–302 was a "statute of the United States"). The instant case is distinguishable in that it represents an instance in which Congress enacted an amendment to an already existing federal statute within the United States Code, namely 18 U.S.C. § 4243.

There is no question but that 18 U.S.C. § 4243 is a federal law applicable to all states in the Union. As an amendment to 18 U.S.C. § 4243, Title III merely supplements that law by addressing an issue that was left unresolved by the original statute. The fact that the issue is germane to the District of Columbia and Title III is, therefore, limited in its application to the District does not take the amendment out of the scope of the overall statute. Accordingly, the court concludes that Title III has the force and effect of a federal law.

### 2. Federal Preemption of State Law

Under the preemption doctrine "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). In determining whether Congress intended a federal law to preempt a state law, "the purpose of Congress is the ultimate touchstone of [the] analysis." *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608 (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)) (internal quotations omitted). Congress

may explicitly state its intent in the language of a statute or it may implicitly state its intent via a statute's structure and purpose. *See Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608. "In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law." *Id.*

■ The explicit language of Title III makes clear that Congress intended to provide for the acquisition by the United States of "all records in the custody or control of the District or [St. Elizabeths] Hospital" pertaining to the defendant patients. Pub.L. No. 104–294, § 301, 110 Stat. at 3495. There is no reasonable way to reconcile this purpose with any congressional intent but that Title III would preempt any D.C. law that prohibited such acquisition by the United States. Accordingly, the court concludes that Congress intended by the explicit language of Title III to preempt any D.C. law in conflict with Title III's stated purpose.

Having concluded that Title III is a federal law which preempts District of Columbia law, the court will dispense with those arguments of the defendants that are grounded in D.C. law and will instead move to a discussion of the constitutionality of Title III's access provision.

### E. Right to Privacy

The defendants argue that the access provision of Title III violates the defendant patients' rights to privacy and is, therefore, unconstitutional. Consequently, the defendants argue that the court should not enforce the mandates of the access provision. The court, however, concludes that Title III's access provision is constitutional and enforceable.

There is no express provision in the Constitution of the United States that bestows upon individuals a right to privacy. The Supreme Court, however, has recognized that such a right exists by virtue of the Due Process Clause of the Fourteenth Amendment. *See Carey v. Population Services Int'l*, 431 U.S. 678, 684, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The right to privacy protects at least two separate interests. The first is an individual's interest in "avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The second is an individual's interest in "independence in making certain kinds of important decisions." *Id.* The defendant patients in the instant case argue that the court should recognize a privacy right protecting their interest in avoiding disclosure of their psychiatric records.

Several courts, including the Supreme Court, have recognized an individual's right to privacy in avoiding disclosure of medical records. *See, e.g., Whalen*, 429 U.S. at 603–604, 97 S.Ct. 869 (recognizing a limited privacy interest in the confidentiality of medical records); *Doe v. Southeastern Pennsylvania Transp. Auth.*, 72 F.3d 1133, 1137 (3d Cir.1995) (stating that medical records fall within the scope of the right to privacy); *F.E.R. v. Valdez*, 58 F.3d 1530, 1530 (10th Cir.1995) (recognizing that patients have a legitimate expectation of privacy in their psychiatric records). This right to privacy is not absolute, however, and "a limited impairment of the right may be allowed if properly justified." *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D.Cal.1995).

■ Various courts have developed slightly different tests to determine whether encroachment upon an individual's right to privacy rises to the level of a constitutional violation. *See, e.g., Doe*, 72 F.3d at 1140 (setting forth seven factors to be weighed in determining whether disclosure of medical records constitutes an invasion of privacy); *F.E.R.*, 58 F.3d at 1535 (employing a three-part balancing test); *Soto*, 162 F.R.D. at 619 (setting forth five factors to be considered); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 111 (3d Cir.1987) (applying a "flexible balancing test"). In essence, however, all courts agree that the constitutionality of a government action that encroaches upon the

privacy rights of an individual is determined by balancing the nature and extent of the intrusion against the government's interest in obtaining the information it seeks.

■ The court begins its analysis, therefore, by examining the nature and extent of the defendant patients' interest in avoiding disclosure of their psychiatric records. In this respect, several facts seem particularly relevant. First, the defendant patients in the instant case have, to some extent, made their mental conditions matters of public record by pleading not guilty to federal crimes by reason of insanity. The United States Court of Appeals for the Eighth Circuit has noted that "[w]hatever the scope of the constitutional right of privacy ..., it is clear that 'the interests in privacy fade when the information involved already appears on the public record.'" *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69, 77 (8th Cir.1976) (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)). In *McNally*, the Eighth Circuit held that the publication of an inmate's confidential psychiatric report did "not support a claim for invasion of any constitutional right of privacy" because "substantial information regarding [the inmate's] mental competency was a matter of public record." *Id.* at 77–78. Thus, although the court believes that the defendant patients do have a privacy interest in avoiding disclosure of their psychiatric records, this interest is somewhat lessened by the fact that the patients have to some extent made their mental conditions matters of public record.

Second, the plaintiff in the instant case does not seek to obtain the patients' records for public disclosure. The United States merely seeks to obtain the records for its own use. In a similar case, the Supreme Court noted that non-public disclosures of medical records constitute less of an intrusion upon an individual's right to privacy than do public disclosures. *See, e.g., Whalen*, 429 U.S. at 601, 97 S.Ct. 869 (taking into consideration the fact that

there was "no support in the record ... for an assumption that the security provisions of the statute [would] be administered improperly"). Indeed, in *Whalen* the Supreme Court went so far as to state that non-public disclosures of private medical records to authorized government employees are not

meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care. ... [D]isclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient. Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy.

*Whalen*, 429 U.S. at 602, 97 S.Ct. 869 (internal footnote omitted). Similarly, the court concludes in the instant case that requiring disclosure of the defendant patients' psychiatric records to representatives of the United States having financial responsibility for the care and treatment of the patients does not automatically amount to an impermissible invasion of the patients' privacy rights.

On one side of the scale, then, is a limited privacy interest of the defendant patients in avoiding disclosure of their psychiatric records to the plaintiff. On the other side of the scale is the plaintiff's interest in obtaining the patients' records. In considering the plaintiff's interest, the court notes that the plaintiff is financially responsible as a matter of law for the care and treatment of the patients. The plaintiff has a compelling interest "in ensuring that services and supplies for which it is being billed have been provided, and that [it] is not being defrauded." *Hawaii Psychiatric Soc'y v. Ariyoshi*, 481 F.Supp. 1028, 1041 (D.Haw.1979). Moreover, the plaintiff in the instant case has an addi-

tional responsibility to ensure that the defendant patients who have been committed to St. Elizabeths after having been found not guilty of federal crimes by reason of insanity are afforded the highest quality care in a facility that is most suited to their needs as well as the needs of the public. *Cf. Jones v. United States*, 463 U.S. 354, 368, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) ("The Due Process Clause requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed. The purpose of commitment following an insanity acquittal ... is to treat the individual's mental illness and protect him and society from his potential dangerousness." (internal quotations and citations omitted)); *Youngberg v. Romeo*, 457 U.S. 307, 317, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) ("When a person is institutionalized—and wholly dependent on the State—... a duty to provide certain services and care does exist...."); *Reese v. United States*, 614 A.2d 506, 506 (D.C. 1992) ("The dual purposes of [commitment of individuals found not guilty by reason of insanity] are first, the treatment and recovery of the patient, and second, the protection of society and the patient." (internal quotations omitted)).

Weighing the competing interests asserted by the parties, the court concludes that the intrusion upon the defendant patients' privacy rights caused by allowing the plaintiff access to their records does not rise to the level of a constitutional violation given the plaintiff's compelling interest in obtaining the records. Accordingly, the court concludes that the access provision of Title III is constitutionally valid. Moreover, the court concludes that the plaintiff cannot properly fulfill its responsibilities to the patients without the benefit of access to all of their psychiatric records. Accordingly, the court will grant the plaintiff's request for declaratory relief to secure access to the patients' records pursuant to Title III.

## IV. CONCLUSION

For the reasons stated herein, the court rules that the issue regarding the constitutionality of Title III's transfer provision is not ripe for adjudication at this time. With respect to the access provision of Title III, the court rules that the provision is constitutionally valid. The court further rules that the plaintiff, the United States of America, is entitled under Title III to access the psychiatric records of the defendant patients. Accordingly, the court will grant the plaintiff's motion for summary judgment and deny the defendants' motions for summary judgment.

An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 31st day of March, 1999.